```
1                  UNITED STATES DISTRICT COURT

2                        DISTRICT OF MAINE

3    _____

4    UNITED STATES OF AMERICA,           CRIMINAL ACTION

5              Plaintiff            Docket No:  2:21-00149-JDL

6

7         -versus-

8                                             EXCERPT

9    BRIAN DENNISON,

10             Defendant

11   _____

                                    Transcript of Proceedings
12

13   Pursuant to notice, the above-entitled matter came on for Jury
     Trial held before THE HONORABLE JON D. LEVY, United States
14   District Court Judge, in the United States District Court,
     Edward T. Gignoux Courthouse, 156 Federal Street, Portland,
15   Maine, on the 24th day of May 2022 at 8:15 a.m. as follows:

16


17   Appearances:

18   For the Government:    Craig M. Wolff, Esquire
                            Johnathan Nathans, Esquire
19                          Assistant United States Attorneys

20   For the Defendant:     Thomas F. Hallett, Esquire
                            Jordan T. Ramharter, Esquire
21

22
                       Lori D. Dunbar, RMR, CRR
23                     Official Court Reporter

24              (Prepared from manual stenography and
                      computer aided transcription)
25
```

```
 1                        *   *   *   *   *
 2                (The clerk conferred with the Court.)
 3                THE COURT:  I'd like to speak with counsel at
 4    sidebar, so please don your headsets.
 5                              (Sidebar)
 6                THE COURT:  Can everyone hear me?
 7                MR. HALLETT:  Yes.
 8                MR. WOLFF:  Yes, Your Honor.
 9                THE COURT:  I received a note that Mr. Duquette
10    tested positive.  The question then becomes whether under the
11    Court's general orders he's permitted to testify with a mask.
12         It seems to me that, first of all, the Court's general
13    orders don't anticipate a situation like this.  And I'm
14    required to weigh not only the interests of the court
15    generally in terms of the protection of the public but also
16    the interests of the defendant and the Government at stake
17    during the course of this trial.
18         Knowing that we can isolate Mr. Duquette physically,
19    everyone can keep ample distance from him, it seems to me
20    there is very low risk associated with having him testify
21    wearing a mask.  And so I'm inclined to permit him to continue
22    to testify, even though we received this report.  I'll hear
23    from the parties on this issue, Attorney Wolff.
24                MR. WOLFF:  Your Honor, I -- I agree that testifying
25    does seem appropriate and that it can be done safely.  The
```

1  only other issue that I see is that Mr. Duquette is our case
2  agent, and I believe under the Court's general orders it
3  sounds like as soon as he leaves the courthouse he's not
4  allowed to come back in, which obviously would pose a
5  significant problem for the Government, given his role in this
6  case.
7          THE COURT:  Attorney Hallett?  I can't hear you.
8  You're not on.  You're not turned on.
9          MR. HALLETT:  Excuse me, I'm sorry.  I perceive this
10 as a real problem primarily because I'm seated next to
11 Mr. Duquette, close enough anyway, and I have very good
12 reasons to -- I have a daughter who's eight and a half months
13 pregnant.  So I'm not sure how the Court wants to handle this.
14      It's a difficult situation.  I think I need to speak to
15 my client about it.  You know, if Mr. Duquette is -- leaves
16 and then he can't be called back, that's if he needs to be,
17 and I have no idea if he does, I just think we need to think
18 about all of the potential ramifications.
19          THE COURT:  Attorney Hallett, why don't you take the
20 time, then, to speak to your client.
21          MR. HALLETT:  Thank you.
22          THE COURT:  And then I'll discuss it with you
23 further.
24          MR. HALLETT:  Thank you.
25          THE COURT:  Go ahead.

1                    (Defendant conferred with counsel.)

2              THE COURT:  Attorney Hallett, go ahead.

3              MR. HALLETT:  For obvious reasons, Judge, we

4    certainly wish to go forward with this trial.  We're in the

5    middle of it.

6         I would note that Mr. Duquette's not wearing a

7    particularly good mask.  I think he needs to get an N95 mask

8    or equivalent thereto.  I would ask that he not be seated

9    right with all of us.  Certainly when he's up at -- on the

10   witness stand that will be -- I don't know how -- how that

11   impacts his status here as being the primary officer on the

12   job; so, Craig, I'll let you speak to that.  But we are not

13   adverse to going forward as long as steps are taken to

14   insulate people.

15             THE COURT:  Thank you.

16             MR. HALLETT:  And I also have a Rule 403 objection,

17   Your Honor, which I don't want to forget.

18             THE COURT:  Attorney Wolff?

19             MR. WOLFF:  Judge, thinking about it some more, if

20   the -- if the Court finds it acceptable for Mr. Duquette to

21   finish his testimony, I think we certainly agree that that's

22   the way to go and I think, thinking about it some more, we --

23   we should be able to find somebody who can step into the role

24   of case agent to -- I mean, we are -- obviously, as you know,

25   the Government's evidence is only scheduled to take until the

1    end of today, hopefully; and I think we can -- we can do what
2    it takes to keep this case going despite -- and so if
3    Mr. Duquette testified and then frankly left I think that -- I
4    think we could continue.
5          THE COURT: All right. Counsel, I want to give this
6    additional thought. I'll be back to you.
7          (The Court conferred with the clerk.)
8          THE COURT: This is a -- can you all hear me?
9          MR. HALLETT: Yes.
10         THE COURT: This is an unexpected turn, to say the
11   least. It seems to me I want to give it additional thought.
12   So we're going to take an additional recess of approximately
13   10 minutes so that I can contemplate it further. We'll be in
14   recess.
15         MR. HALLETT: Thank you.
16               (Open court)
17         THE COURT: Court will be in recess for 10 minutes.
18       (A recess was taken from 11:02 a.m. to 11:19 a.m.)
19               (Sidebar)
20         THE COURT: Can everyone hear me?
21         MR. WOLFF: Yes, Your Honor.
22         MR. HALLETT: Yes.
23         THE COURT: So let me summarize where I understand
24   we are at, that is, that the FBI case agent in the case who's
25   currently testifying, Mr. Duquette, I'm told -- and, Attorney

1  Wolff, you can correct me if this is not correct -- I'm told
2  that he arrived late this morning and therefore was not
3  available to be tested when the clerk's office provided
4  testing before the onset of the trial today.  I'm also told
5  that during the break that we took, the recess, he went and
6  obtained a test, and that's the test result that is
7  negative -- I'm sorry, is positive, rather, has come back
8  positive.
9       So let me pause there.  Is that your understanding,
10 Attorney Wolff?
11          MR. WOLFF:  Your Honor, I don't know that
12 Mr. Duquette arrived late.  I think frankly, because of the
13 misapprehension that we had, we believed that witnesses would
14 be able to remove their masks regardless of status, so we
15 didn't ask him to be tested.  But when the Court pointed out
16 that that was the case then that is when he went downstairs to
17 be tested.
18          THE COURT:  I see.  So the reason that he wasn't
19 tested when he arrived first thing in the morning is more
20 likely that he had understood because the Government had
21 understood that witnesses had to remain masked and therefore
22 they didn't need to be tested?
23          MR. WOLFF:  Or actually I -- well, at least my
24 misapprehension was that witnesses could take off their masks
25 while they were testifying, which obviously was not the case.

1                THE COURT:  In any event, I take it that you did not
2    understand that witnesses in order to remove their masks had
3    to be tested first?
4                MR. WOLFF:  That's correct, Your Honor.
5                THE COURT:  Okay.  So that's I think the source of
6    the problem.
7            I also understand from your concluding comments before I
8    left the bench that both sides wish to proceed,
9    notwithstanding this information.
10               MR. WOLFF:  Yes, Your Honor.
11               THE COURT:  Is that right?
12               MR. HALLETT:  Yes, Your Honor.
13               THE COURT:  Now, the -- having the witness testify
14   knowing that he is possibly infected because of a positive
15   test is contrary to the Court's general orders, and it seems
16   to me that it would be necessary for the Court to inform all
17   of the persons in the courtroom, and in particular the jurors,
18   of what we know, and that is that this witness tested
19   positive, which could be a source of some concern for one or
20   more of the jurors.  And so it seems to me that it's important
21   to weigh the effect that that might have on this trial with --
22   against the effect of or the value of simply proceeding.
23           I don't think that it's appropriate to not inform the
24   jurors of what we know about Mr. Duquette or, for that matter,
25   the individuals who are in the courtroom.  So they will be

1 informed. It also seems to me that it is not, although I've
2 considered this possibility, wise to give the choice -- the
3 jurors the personal choice of continuing to serve or being
4 excused based upon their receipt of the information regarding
5 Mr. Duquette. Even if 12 or more were to indicate a
6 willingness to continue, I remain concerned, first of all,
7 that there is some health risk of us all continuing to proceed
8 in a courtroom with an infected person, known to be infected,
9 and that also this is the type of question which is upsetting
10 for many people and could cause them upon reflection perhaps
11 to change their mind about continuing to participate. So
12 continuing with the trial under these conditions it seems to
13 me is fraught with the possibility of complexity.
14     Of course, I have to weigh this against Mr. Dennison's
15 rights. The trial's begun; our resources have been expended;
16 Attorney Hallett's indicated his client would like to continue
17 notwithstanding this information. And that also of course it
18 seems to me is extremely important.
19     As I've weighed this, counsel, I've concluded
20 tentatively that the most just way to respond to this unusual
21 set of circumstances is to declare a mistrial. The rule
22 provides that before ordering a mistrial the Court is to give
23 each side, the defendant and the Government, the opportunity
24 to comment on the propriety of the order, to state whether the
25 party consents or objects, and to suggest alternatives. And

```
 1    so that's where we are at this moment.
 2           I'll hear first from the Government.  Actually I'll hear
 3    first from the defendant if the defendant wishes to go first
 4    because the defendant's name appears first in Rule 26.3.
 5              MR. HALLETT:  If I could look at that rule for a
 6    second?
 7              THE COURT:  You may.
 8              MR. HALLETT:  Embarrassingly, Your Honor, what rule
 9    are you looking at?
10              THE COURT:  26.3 of the Rules of Criminal Procedure.
11              MR. HALLETT:  Yes, thank you.
12        Your Honor, our general position is as previously
13    stated, and that is that we would like this case to move
14    forward.  I have been informed by my client that he does not
15    wish to put anyone at risk, so I'm bringing that to the
16    attention of the Court.  With that said, from defense
17    counsel's perspective, we would wish to continue.  We
18    understand what the Court is saying but let me just lodge that
19    objection.
20              THE COURT:  Thank you.  Attorney Wolff?
21              MR. WOLFF:  Your Honor, obviously we wish to
22    continue as well.  This is a difficult question.  From sort of
23    a partisan viewpoint I do worry that -- and I think it would
24    be appropriate for the Court to notify the jurors, but I do
25    think we do then run the risk of having jurors who are not at
```

1    all focusing on the testimony and frankly perhaps holding it
2    against the Government for putting a witness up who could
3    possibly infect them.  So I do think that is fraught with --
4    with difficulty.
5         So I -- at the end of the day I guess I defer to the
6    Court on this, Your Honor, because I do think that there are
7    some serious concerns about proceeding if we notify the
8    jurors, which I think would be appropriate.
9              THE COURT:  Attorney Wolff, I take it Mr. Duquette
10   is still here?
11             MR. WOLFF:  He is in the courthouse, Your Honor, is
12   my understanding.
13             THE COURT:  And I would like to inform the jurors
14   that Mr. Duquette tested positive, and even though I don't
15   think that his consent is required, it seems to me as a
16   courtesy to him I would like you to speak with him; and if he
17   has any specific objection to that information being made
18   public you'll communicate that to me.
19             MR. WOLFF:  Yes, Your Honor.
20             THE COURT:  Is that something you can do now?
21             MR. WOLFF:  I can, yes.
22             THE COURT:  Is he right out in the hallway?
23             MR. WOLFF:  I believe so.
24             THE COURT:  I'll wait for you, then.
25             MR. WOLFF:  Thank you.

```
 1                       (Pause)
 2           MR. WOLFF:  Your Honor, Mr. Duquette does not have
 3   any objection to making the jurors aware of that.
 4           THE COURT:  Thank you.  Counsel, anything further
 5   before I summons the jury and inform them of my decision?
 6           MR. WOLFF:  Nothing from the Government, Your Honor.
 7           MR. HALLETT:  Nothing from the defendant.
 8           THE COURT:  Thank you.
 9                       (Open court)
10           THE COURT:  Please summons the jury.
11                       (Sidebar)
12           MR. HALLETT:  Your Honor, one of the things here is
13   that obviously the defense has opened in this case, has
14   disclosed its case.  To the extent that the prosecution can
15   now go out and plug holes in the case as a result of the
16   defense that's been stated in opening, that's another reason
17   why we need to go forward with this, because I think that
18   would be fundamentally unfair.
19           THE COURT:  All right.  Certainly now the record
20   reflects that argument.
21           MR. HALLETT:  Thank you.
22           THE COURT:  I'm satisfied under the circumstances at
23   this point the -- of course the defense has not presented any
24   evidence, that that does not outweigh the reasons I've already
25   cited counseling in favor of a mistrial, but thank you.
```

1           (Jury entered.  Time noted:  11:32 a.m.)
2           THE COURT:  Members of the jury, our break took much
3  longer than I anticipated because of some information that I
4  received that required my attention and I want to discuss with
5  you.
6           I'm sure that you're aware, I know that you're aware,
7  that the Court has adopted various protocols and rules to be
8  able to continue to operate the court in the time of COVID-19.
9  It's why you're all wearing masks right now; it's why all the
10 people who are sitting in the gallery are wearing masks.
11          In addition, we have various protocols regarding the
12 participants.  When I say the participants I mean people
13 speaking, the judge, the lawyers, the witnesses, under which
14 if they're fully vaccinated and they are tested when they
15 arrive and they test negative then they can speak without
16 masks on.
17          However, there's one overriding protocol that we have
18 that actually is most central to what I'm about to tell you,
19 and that is the protocol that if someone is positive for
20 COVID-19 they're not permitted to be in the courthouse.  And
21 unfortunately I've learned that someone is positive for
22 COVID-19.  That individual is Mr. Duquette, who was just
23 testifying.  We were unaware that he was positive for COVID-19
24 because he had not received a test this morning when he
25 arrived, as is the practice, but instead was tested during the

1    recess.  You'll recall that Mr. Duquette, who's not in the
2    courtroom at the moment, was wearing a mask at all times, both
3    when he was seated at table and when he was testifying.
4         I can say from my general and specific knowledge
5    regarding COVID-19 and the operation of courts that the
6    protocols that we have in place are -- are the standard of the
7    art or I should say are really among the best I'm aware of;
8    that is, this court has not had a single known transmission of
9    COVID-19 among people in the courthouse since the pandemic has
10   started, and that's because of the protocols that we follow on
11   the advice of an expert virologist who works with us.
12        But we are now in the first day of a trial in which a
13   key witness has tested positive for COVID-19, and that
14   requires me as the judge to weigh various things in deciding
15   whether or not it is sensible to proceed, notwithstanding the
16   fact that we've had a witness testified as positive and
17   frankly would continue to testify, because his testimony is
18   far from complete in this case.
19        I've discussed this at some detail with the attorneys
20   for both sides.  There are good arguments to be made that it
21   is -- it would be sensible to continue on with the trial,
22   given all the time and resources that have been dedicated to
23   this, all of the time, of course, and inconvenience that
24   you've already experienced just serving as a juror, having to
25   take off from your daily lives and be here.  But I've

1    concluded that the better judgment in this case is to declare
2    a mistrial of this trial.  The -- the thought of continuing
3    the trial knowing that we've all now been having very, very
4    indirect exposure -- and let me emphasize that.  I don't have
5    any real concern, serious concern, that there's been direct
6    exposure, but of course it can't be ruled out.
7         But I've concluded, weighing of course all the interests
8    that I have to weigh as a judge, that the best judgment is to
9    declare a mistrial in this case.  Now, what that means is that
10   this trial has ended today, ends now.  You've completed your
11   jury service and you will not be subject to recall immediately
12   as a consequence of that.
13        Unfortunately, you will not get to finish your jury
14   service in the sense of hearing all the evidence and then
15   taking on the incredibly important responsibility as a United
16   States citizen of deliberating and entering a verdict one way
17   or the other in an important case such as this.  So even
18   though I'm excusing you now without you completing the task, I
19   want to emphasize that you have now fulfilled what is perhaps
20   the most important duty that U.S. citizens have under our
21   Constitution.  The right to trial by jury dates back to the
22   13th century.  It was a major reason why the colonists decided
23   to declare their independence from Great Britain.  It is
24   enshrined in our Bill of Rights, and the idea that we bring
25   together a cross-section of the community, people who don't

know each other and are not lawyers typically, to resolve disputes such as this is a hallmark of American justice and of democracy.

So even though we're not concluding the trial today, you have done your duty, you have lived up to your constitutional responsibilities, and for that I express my profound thanks and I know the thanks of the attorneys and all of the parties to this case.

With that, I'm going to ask you to go back to the jury room. Our jury administrator will give you her final instructions today. But as I've said, you've completed your jury service. Thank you very much. The jury may retire at this time.

(Jury excused. Time noted: 11:38 a.m.)

THE COURT: And so the Court declares a mistrial. Attorney Wolff, anything further from the Government?

MR. WOLFF: No, Your Honor.

THE COURT: Attorney Hallett, anything further from the defense?

MR. HALLETT: Nothing, thank you, Your Honor.

THE COURT: All right. I want to thank counsel for their efforts. We will make a point of having a conference to discuss rescheduling in this matter. And to the members of the public who are present I simply will rest on whatever I told the jurors with regard to any potential exposure in the

1 courtroom today.  Just be mindful of the information I shared
2 with you.  With that we now stand adjourned.
3 (Time noted:  11:40 a.m.)
4 **C E R T I F I C A T I O N**
5 I, Lori D. Dunbar, Registered Merit Reporter, Certified
6 Realtime Reporter, and Official Court Reporter for the United
7 States District Court, District of Maine, certify that the
8 foregoing is a correct transcript from the record of
9 proceedings in the above-entitled matter.
10 Dated:  May 25, 2022
11 /s/ Lori D. Dunbar
12 Official Court Reporter