```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MAINE

 3      _____

 4      UNITED STATES OF AMERICA,          CRIMINAL ACTION

 5              Plaintiff            Docket No:  2:21-00149-JDL-1

 6

 7           -versus-

 8

 9      BRIAN DENNISON,

10              Defendant

11      _____

                    Transcript of Proceedings
12

13      Pursuant to notice, the above-entitled matter came on for
        Videoconference Pretrial Case Management Conference held
14      before THE HONORABLE JON D. LEVY, United States District Court
        Judge, in the United States District Court, Edward T. Gignoux
15      Courthouse, 156 Federal Street, Portland, Maine, on the 20th
        day of April 2022 at 10:00 a.m. as follows:
16

17      Appearances:

18      For the Government:    Craig M. Wolff, Esquire
                               Assistant United States Attorney
19
        For the Defendant:     Thomas F. Hallett, Esquire
20                             Jordan Ramharter, Esquire

21
                    Lori D. Dunbar, RMR, CRR
22                  Official Court Reporter

23             (Prepared from manual stenography and
                    computer aided transcription)
24

25
```

```
 1          (All participants via Zoom.  Defendant not present.)
 2               THE COURT:  We are convening a videoconference in
 3     the case of United States versus Brian Dennison.  This is
 4     21-CR-149.  Counsel, would you please note your appearances
 5     for the record?
 6               MR. WOLFF:  Good morning, Your Honor.  Craig Wolff
 7     for the United States.
 8               THE COURT:  Good morning.
 9               MR. HALLETT:  Good morning, Judge.  Tom Hallett for
10     Brian Dennison, along with Jordan Ramharter, who also
11     represents Brian Dennison.
12               THE COURT:  Good morning to you as well. This is a
13     pretrial conference and so let's get right into it.  This case
14     is scheduled for three days, beginning May 23rd.  The trial
15     times that we have set for the day is starting at 8:30 in the
16     morning, concluding around 2:45 in the afternoon.  I usually
17     take a 15-minute break in the morning, a half hour for lunch,
18     and then, if time permits, a 10- or 15-minute break in the
19     afternoon.
20           Is there any problems or any concerns from either side
21     with respect to the basic trial schedule, Attorney Wolff?
22               MR. WOLFF:  No, Your Honor.
23               THE COURT:  And Attorney Hallett?
24               MR. HALLETT:  No, Your Honor.
25               THE COURT:  I'm interested to know whether either
```

```
 1   side anticipates the possible need for any motions in limine
 2   in this case.  Attorney Wolff?
 3            MR. WOLFF:  Your Honor, I think there will be.
 4   Mr. Hallett and I have already discussed that there's most
 5   likely going to be an issue about how much information
 6   obtained from Mr. Dennison's electronic devices should be
 7   introduced at trial because of some potential 403 issues.  So
 8   I do think it would make sense to flesh that out in some
 9   motions in limine.
10            THE COURT:  All right.  Attorney Hallett?
11            MR. HALLETT:  I agree with that, Your Honor.
12            THE COURT:  Okay.  And so I take it this is the
13   Government's motion or the defense -- actually I shouldn't
14   take it.  Is it -- which side is moving first?
15            MR. WOLFF:  I -- go ahead, Tom.
16            MR. HALLETT:  The defense would certainly be
17   attempting to exclude it, so to the extent that motions in
18   limine are generally exclusionary, which I guess they go both
19   ways, we would be filing that motion.  Craig may file as well,
20   I guess.
21            THE COURT:  All right.  So how about if we establish
22   a date for the submission of the motion and your brief in
23   support.  What do you propose, Attorney Hallett?
24            MR. HALLETT:  In terms -- well, if we're starting on
25   the 23rd, Judge, I would -- I think we could have them in by
```

```
 1    the -- a week prior to that, if that works.
 2              THE COURT:  Yeah, I want to give the Government
 3    enough time to respond before we get to our trial date.
 4              MR. HALLETT:  For sure, right.
 5              THE COURT:  How about two weeks prior and then a
 6    week after that the Government?
 7              MR. HALLETT:  That's fine.
 8              THE COURT:  All right.  And, Attorney Wolff, does
 9    that work for you?
10              MR. WOLFF:  Yes, it does, Your Honor.
11              THE COURT:  All right.  Charity Pelletier, are you
12    able to help me with the dates?
13              THE CLERK:  Yes, Your Honor.  The motion will be due
14    5/9, May 9th, and the response will be due May 16.
15              THE COURT:  Great, thank you.
16         We've scheduled Judge Wolf to preside at the jury
17    selection in this case.  Will both sides consent to Judge Wolf
18    presiding at jury selection, Attorney Wolff?
19              MR. WOLFF:  Yes, Your Honor.
20              THE COURT:  Attorney Hallett?
21              MR. HALLETT:  Yes, Your Honor.
22              THE COURT:  Okay.  So we'll need you to file your
23    written consent to that effect no later than three days prior
24    to jury empanelment.  If you can do that right away, though,
25    I'd appreciate it so we can have that taken care of.
```

1          Attorney Wolff, from the Government's perspective, I
2     take it that the three days -- three days you anticipate will
3     be sufficient to cover all the evidence and arguments for the
4     jury to get the case?
5               MR. WOLFF:  I do, Your Honor.  Mr. Hallett and I
6     have talked about this as well.  I think there's a very good
7     chance we could finish in two days, but I do think it makes
8     sense to have three just in case, you know, it could bleed
9     into that day, given arguments and that sort of thing.
10              THE COURT:  And from the Government's perspective
11    are there any witness scheduling issues that I should be aware
12    of going into this?
13              MR. WOLFF:  None that I'm aware of at this point,
14    Your Honor.  Obviously if any come up I'll raise them as soon
15    as we learn of them but at this point, no.
16              THE COURT:  All right.  Attorney Hallett, how about
17    from your perspective?
18              MR. HALLETT:  I don't believe so, Your Honor.
19              THE COURT:  Attorney Wolff, it seems to me the
20    Government's going to have to file a witness list, and to the
21    extent the defendant can file one it should prior to jury
22    selection.  So I'm simply going to make those due three days
23    prior to jury selection in this case.  Any problem from either
24    side on that score?
25              MR. WOLFF:  Nothing from the Government, Your Honor,

```
 1    no.
 2              MR. HALLETT:  Nothing for the defendant.
 3              THE COURT:  All right.  Charity, with a trial date
 4    starting May 23rd, do you happen to know off the top of your
 5    head when the deadline would be for a plea if that were to
 6    occur in this case?
 7              THE CLERK:  I'm sorry.
 8              THE COURT:  I'm sorry, actually it would precede
 9    jury selection.  Do we have a date for the deadline for
10    notification of a plea agreement in this matter?
11              THE CLERK:  I can get one, Your Honor.
12              THE COURT:  All right.  Well, I'll ask that you do
13    that and inform the attorneys.
14         How about any -- apart from the 403 issue that you
15    mentioned, are there any other unusual evidentiary issues that
16    either side anticipates in this case?
17              MR. WOLFF:  I don't believe so, Your Honor.  There's
18    a potential that the Government may seek to admit some
19    certified business records in lieu of live custodians of
20    records.  Obviously I'll provide those records and the
21    certifications to Mr. Hallett so he can evaluate them and
22    decide whether he wants to challenge them.  I think that's the
23    only evidentiary issue that I can think of at this moment.
24              THE COURT:  All right.  Attorney Hallett, how about
25    from your perspective?
```

1	MR. HALLETT: I don't believe so, Judge.
2	THE COURT: Are there any *Brady* or Jencks Act issues
3	that we need to discuss today, Attorney Wolff?
4	MR. WOLFF: Nothing in terms of *Brady*, Your Honor.
5	There will be some additional Jencks materials that I'll
6	provide to Mr. Hallett in advance of trial. I think generally
7	my practice is to do that two weeks in advance of trial, and
8	it may be sooner than that. I don't think there are any
9	safety issues or anything of that sort, obviously, so we
10	should be able to get that well in advance of the trial date.
11	THE COURT: Okay. Attorney Hallett?
12	MR. HALLETT: No, Your Honor. I -- I think that
13	there is one issue, and that is that I believe the Government
14	has indicated that they may be calling an expert witness. And
15	also that there's some discovery outstanding that I have not
16	yet got, and I've asked that I be immediately provided with
17	that information last week, haven't gotten it. So I just want
18	to make sure that I'm getting that in a timely fashion,
19	particularly the expert designation. So I just bring that to
20	the Court's attention, that that is outstanding.
21	THE COURT: Attorney Wolff?
22	MR. WOLFF: Yes, Your Honor. Yes, I do anticipate
23	we more than likely will be calling one computer forensic
24	examiner. I just obtained his qualifications, so I can
25	provide those to Mr. Hallett. So I should be providing that

```
 1    expert designation more than likely by the end of today or at
 2    the latest tomorrow.
 3              THE COURT:  Based on that representation I won't
 4    establish a separate deadline for that purpose.
 5              MR. HALLETT:  But there is other outstanding
 6    discovery, Craig, which I haven't gotten, specifically with
 7    respect to the AR-15, et cetera, et cetera.
 8              MR. WOLFF:  Yes, and that should --
 9              MR. HALLETT:  That's been out there for a long time,
10    so I'm a little nervous that I haven't gotten that.
11              MR. WOLFF:  I will also have that on the same
12    timeline, either later today or tomorrow.
13              MR. HALLETT:  Thank you.
14              THE COURT:  Is up to a half hour each for each side
15    for opening statements sufficient?
16              MR. WOLFF:  It is for the Government, Your Honor.
17              THE COURT:  Attorney Hallett?
18              MR. HALLETT:  Well, I'm thinking, Judge.  I -- I
19    tend to usually go longer than a half an hour, in all honesty,
20    and I -- I guess I would ask for 45 minutes in this case.  I'm
21    not sure I'd use it all, but I'd ask for that.
22              THE COURT:  All right.  It will be up to 45 minutes
23    for each side.
24              MR. HALLETT:  Thank you.
25              THE COURT:  Do either side anticipate any other
```

1    crimes evidence in this case, Rule 404(b)?
2            MR. WOLFF:  No, Your Honor.
3            THE COURT:  I take it you agree, Attorney Hallett?
4            MR. HALLETT:  Yes, I do.  We will not be offering
5    any evidence of prior crimes.
6            THE COURT:  All right.  That's good to hear.  And
7    with respect to jury instructions, going to require that they
8    be submitted three days prior to jury impanelment.
9            Attorney Wolff, is there anything else that you'd like
10   to discuss today?
11           MR. WOLFF:  No, Your Honor.  I think those are all
12   the issues that I can think of at this point.
13           THE COURT:  Attorney Hallett, anything else?
14           MR. HALLETT:  So we've got voir dire questions and
15   trial briefs scheduled to be due on April 25th.
16           THE COURT:  Right.
17           MR. HALLETT:  Would it be possible to push that out
18   to the -- a few days, like to the end of the week, of that
19   week, or -- we've got a number of deadlines in the interim
20   here, and so I'm a little bit nervous, but I'm just wondering
21   if we can do that.
22           THE COURT:  Right.  Charity, would you please remind
23   me when jury selection is, what date?
24           THE CLERK:  Jury selection is May 2nd.  It's a
25   Monday.

1    THE COURT:  And, Attorney Hallett, you're asking
2    that the deadline for voir dire and the like be pushed out to
3    when?
4    MR. HALLETT:  Well, it would be until the 29th,
5    which is too long, I acknowledge.  So maybe to the 27th, which
6    is that Wednesday.
7    THE COURT:  It seems to me that's sufficient.
8    MR. HALLETT:  Thank you.
9    THE COURT:  And so we'll make the deadline
10   April 27th.  And -- go ahead.
11   MR. HALLETT:  I have one other question, Judge, and
12   that is jury questionnaires.  I know that the Court sends out
13   a jury questionnaire.  It's pretty general information; I
14   reviewed it yesterday online.
15       This is -- this is a case that involves some difficult
16   issues concerning anti-Semitism, et cetera, et cetera.  I
17   always get nervous that jurors tend to not answer questions in
18   public the way they will answer questions when asked in
19   private in writing.
20       And I'm wondering if perhaps we should have a jury
21   questionnaire -- and I don't know if the federal court does
22   this.  We do it in state court a lot, where we have jury
23   questionnaires that take the -- are in lieu, sort of, of voir
24   dire questions.  And I've found personally and I think
25   generally that people are more likely to respond completely to

```
 1    written questionnaires than they are in open court when
 2    they've got to stand up and make a statement.
 3            So I don't know whether you'd entertain a juror
 4    questionnaire or not, but I would suggest that we -- that we
 5    might think about that in this case.  And, again, I don't even
 6    know if this is done in federal court, to be honest.
 7                THE COURT:  Attorney Wolff, what's your view?
 8                MR. WOLFF:  Your Honor, I know that it certainly has
 9    been done in prior cases.  I don't -- I don't necessarily view
10    this as on par with some other cases where questionnaires have
11    been deemed appropriate, and I don't know what the timing
12    issues are as well.  Obviously we would need to get those
13    questionnaires out and back before jury selection, and the
14    timing is perhaps a little tight for that.  I don't know if --
15    customarily how much lead time we build into that.  I mean, if
16    Mr. Hallett wants to propose some questions, I'm certainly
17    not -- I have no objection to him proposing them.  I can't in
18    a vacuum, obviously, say whether they'll be acceptable or not.
19    But I know we certainly -- that has happened in other cases I
20    know.
21                THE COURT:  Yes, I'm aware of that as well.
22          Attorney Hallett, I'm certainly open to entertaining it,
23    so if you want to make a specific proposal, I want you to do
24    it by way of a motion.
25                MR. HALLETT:  Okay.
```

```
 1              THE COURT:  With your proposed questions.  Now, the
 2   timing of the jury -- the questionnaires that I have -- that
 3   have or will go out, the standard questions, it might be that
 4   it's too late already.
 5         Actually, Charity, do you know whether this pool would
 6   have gotten questionnaires from us already?
 7              THE CLERK:  I can find out.
 8              THE COURT:  We can find out, and it seems to me it's
 9   possible, then, that even if the questionnaires themselves
10   have already gone out or go out before I'm able to act on your
11   proposal, there might be other ways of handling this.  It
12   might be that we could have the venire respond to the
13   questions the morning that they arrive just before jury
14   selection.  So there's different ways that we could handle it.
15   If it's something you want to pursue, I'm going to ask that
16   you act on that within -- let's see, can you act on that
17   within a week?
18              MR. HALLETT:  Yes.
19              THE COURT:  All right.  So seven days from today to
20   make a request if you wish to do so.
21              MR. HALLETT:  Thank you.
22              THE COURT:  And my suggestion to you, Attorney
23   Hallett, is to keep it as simple as possible.
24              MR. HALLETT:  Yes, I understand.
25              THE COURT:  Okay.
```

1           THE CLERK:  I am being told that those
2   questionnaires have gone out, and they'll be uploaded about a
3   week before jury selection.
4           THE COURT:  Right.  So I'll want to check with our
5   jury administrator before I decide whether we want to send out
6   another set of questions to this group or whether it would be
7   best to handle it simply by having people respond to the
8   questionnaire the morning they arrive for jury selection.
9           Do either of you, Attorney Wolff, Attorney Hallett, have
10  any views on that or preferences?
11          MR. WOLFF:  Given that the initial questionnaire has
12  already gone out, Judge, I think it probably makes sense to
13  have them answer the questions when they arrive.  It seems
14  much more -- a much better chance of getting a response,
15  frankly, rather than sending a second questionnaire.
16          THE COURT:  Attorney Hallett?
17          MR. HALLETT:  I second that, Your Honor, given the
18  current mail situation in particular.  I think there probably
19  is not enough time to get it out and back.
20          THE COURT:  Good point.  Very good.  Anything else
21  for us to discuss today, Attorney Wolff?
22          MR. WOLFF:  Nothing from the Government, Your Honor.
23          THE COURT:  Attorney Hallett?
24          MR. HALLETT:  Not for the defendant, thank you.
25          THE COURT:  Attorney Ramharter, sorry you didn't get

```
 1   to speak today.  But I'm not sure we've met before, so it's
 2   nice to meet you and have you on board.
 3              MS. RAMHARTER:  Thank you, Your Honor.  Nice to meet
 4   you, too.
 5              THE COURT:  How long have you been working with
 6   Attorney Hallett?
 7              MS. RAMHARTER:  Just over a year.  I was also a
 8   intern here, though, in law school, so happy to be here.
 9              THE COURT:  Excellent, great.
10         Finally, Charity Pelletier, anything we haven't talked
11   about that needs to be addressed?
12              THE CLERK:  Just one clarifying question.  You
13   mentioned the trial brief and voir dire.  You mentioned voir
14   dire was going to be -- the deadline was 4/27.  Did you also
15   mean to -- was the trial brief also extended to 4/27?
16              THE COURT:  I don't see why not.  Yeah, that's fine.
17              THE CLERK:  And then the last thing was date for a
18   plea agreement, 4/25.
19              THE COURT:  Remind me again when jury selection is.
20              THE CLERK:  5/2.
21              THE COURT:  Yeah, that's fine.  That's good, yes,
22   thank you.  Great.  Well, I hope everyone's well.
23              MR. WOLFF:  Thank you, Judge.
24              THE COURT:  With that we'll call it a wrap.  Thank
25   you.
```

MR. HALLETT:  Thank you very much.

MS. RAMHARTER:  Thank you, Your Honor.

(Time noted:  10:16 a.m.)


**C E R T I F I C A T I O N**

I, Lori D. Dunbar, Registered Merit Reporter, Certified Realtime Reporter, and Official Court Reporter for the United States District Court, District of Maine, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated:  June 21, 2023

/s/ Lori D. Dunbar

Official Court Reporter