UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,                CRIMINAL ACTION

              Plaintiff              Docket No:  2:21-cr-00149-JDL


          -versus-                    **VOLUME I OF II**

                             **REDACTED**

BRIAN DENNISON,

              Defendant

_____

Transcript of Proceedings


Pursuant to notice, the above-entitled matter came on for **Jury Selection** held before **THE HONORABLE KAREN FRINK WOLF,** United States Magistrate Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 2nd day of May, 2022 at 8:32 a.m. as follows:


Appearances:

For the Government:  Craig M. Wolff, Esquire

For the Defendant:  Thomas F. Hallett, Esquire
                     Jordan M. Ramharter, Esquire
                     Grainne Dunne, Esquire



Tammy L. Martell, RMR, CRR
Official Court Reporter

(Prepared from manual stenography and
computer-aided transcription)

```
 1                      (Chambers Conference.)

 2            THE COURT:  All right, so I am going to pass around a

 3   new written juror questionnaire and new voir dire question --

 4   open court voir dire questions that I have prepared and I'm

 5   going to go over with you what the changes essentially are.

 6   All right, everybody have their copies?

 7        All right.  So we're going to be -- we're on the record

 8   now in United States versus Dennison, case number 21-CR-149.

 9   For our court reporter, could everybody state their appearances

10   for the record, Government first.

11            MR. WOLFF:  Good morning, Your Honor, Craig Wolff for

12   the United States.

13            THE COURT:  Thank you.

14            MR. HALLETT:  Thomas Hallett for the defendant.

15            MS. RAMHARTER:  Jordan Ramharter for the defendant.

16            THE COURT:  Thank you.  All right, so let's start with

17   the written juror questionnaire.  First of all, Mr. Hallett, I

18   have agreed with your request to change the language regarding

19   the jury's ability to be fair and impartial --

20            MR. HALLETT:  Thank you.

21            THE COURT:  -- and I have changed that throughout the

22   written questionnaire.  I have also changed it on a couple of

23   questions on the in-court voir dire even though you did not

24   request that.

25            MR. HALLETT:  Okay, thank you.
```

1          THE COURT:  You're welcome.  In addition -- okay, so

2    that's it for the written questionnaire.  I have added a

3    question to the written questionnaire, if you would look at it.

4    It is -- it's not in order so we -- it's in the middle in

5    question three.

6          Mr. Hallett, this is really to deal with your issue

7    regarding requesting members of the venire or their family or

8    friends are Jewish or identify as Jewish.  I'm not going to ask

9    that question, but what I have done with the written

10   questionnaire as well as with the voir dire, which we'll get

11   to, is I have crafted questions that I believe get to the bias

12   issue that you are concerned about.  So if everybody would take

13   a look at Question 3 and I'll just read it.

14         Given the charge discussed in Question 1 and the possible

15   evidence discussed in question two, do you have any racial,

16   political, religious, philosophical, or other beliefs, views,

17   or opinions that would affect your ability to be fair and

18   impartial?  On the written questionnaire that's how I intend to

19   deal with the concern regarding identifying jurors with a bias

20   or prejudice because of any of their religious or other views.

21         It's probably best to review this also in the context of

22   what I've done with the --

23         MR. HALLETT:  Sure.

24         THE COURT:  -- voir dire, so let's turn to that next.

25   So, as I mentioned, I have changed a couple of the questions to

1    reflect the ability to be fair and impartial rather than the

2    language that I had initially which said something about having

3    difficulty being fair and impartial I think.

4        So if you look at Question 19, this really goes to the

5    point that we're discussing.  Finally, given what you have

6    learned about the issues in the case, is there anything that

7    gives you concern about serving on the jury or any reason

8    whatsoever that you could not be completely fair and impartial

9    toward the Government and the defendant?

10        So again, Mr. Hallett, I'm trying to address there the

11    issues that you have regarding jury members if they were Jewish

12    feeling that they may be victims and so that's what this

13    question is directed at.

14        Throughout both the written questionnaire as well as the

15    start of the voir dire itself the issues in the case are

16    completely set out.  I'm going to read the indictment that

17    specifically references the Twitter post and the quoted

18    language in that post.

19        There are numerous questions in both written voir dire and

20    many, many, many chances for jurors to set forth any bias that

21    they have for any reason whether that's racial, religious,

22    political, philosophical, so that's how I intend to deal with

23    that.

24        I think I left off one other thing with respect to the

25    voir dire.  I didn't leave it off, but I have accepted your

```
 1   request, Mr. Hallett, regarding legal instructions after each
 2   legal instruction to ask the jurors if they would find it
 3   difficult or impossible to follow the instructions.
 4           MR. HALLETT:  Appreciate that.  Judge, I do note here
 5   that on No. 6 --
 6           THE COURT:  In?
 7           MR. HALLETT:  In the voir dire.
 8           THE COURT:  Yep.
 9           MR. HALLETT:  It still contains that would make it
10   difficult for you to be an impartial juror in this case.  I
11   specific -- I think I referenced No. 6 in my e-mail.
12           THE COURT:  Yep, we'll change that.
13           MR. HALLETT:  Thanks.  And if I could be heard on --
14           THE COURT:  You -- I'll ask Mr. Wolff if he has
15   anything further.
16           MR. WOLFF:  I don't have any objection, Your Honor.  I
17   think adding that No. 3 is a good way to get at the issue
18   without asking the question that I don't think is necessary and
19   frankly I think raises some other possible issues, so -- and I
20   think also No. 3 is consistent, to the extent there have been
21   at least a few cases that have dealt with this, questions like
22   that have been asked and have been deemed to be a sufficient
23   exploration of the subject.
24           THE COURT:  Okay, thank you.
25           MR. HALLETT:  Respectfully I would press my objection
```

1    to not including the question about being -- identifying as

2    Jewish either ethnically or religiously.  The reason for that,

3    as I put in my e-mail, is that this is an odd, odd case, and we

4    filed a motion to dismiss early on because the target group is

5    so large as to include 15 million Jewish-identifying people

6    around the world.  That motion was denied so what we're left

7    with is a threat to kill Jews which could be interpreted by

8    members of the jury of putting them in a position of being the

9    victim.  I don't think it's permissible to have a victim sit on

10   a jury.

11       The case that was -- that I cited suggested that you do

12   need to obviously explore bias.  The case cited by Mr. Wolff is

13   not on point.  What that involved was cases -- criminal acts

14   against Jewish businesses and a -- and synagogues.  That is

15   vastly different than threatening in specific Jewish people

16   themselves who are sitting on the jury.

17       I do not believe that I can get a fair and impartial trial

18   for my client to the extent that Jewish people are sitting on

19   the jury.  They may have -- they may personally believe that

20   they do not have biases which will impact the outcome, but what

21   we need to be aware of is the very subtle biases that occur

22   without the knowledge of the juror, and I would suggest that

23   the risk of a bias being created by being a victim is so

24   significant that we need to ask that question.  So those are my

25   reasons for my objection to that.  Thank you.

1          THE COURT:  All right.  Thank you, your objection is

2     noted.  It's overruled.  I have reviewed both the Ham versus

3     South Carolina case that you have presented, Mr. Hallett, as

4     well as the Greer case, United States versus Greer, which the

5     United States cited, as well as a number of other cases on this

6     issue.  I'm not unsensitive to it, or insensitive to it, to the

7     issues that you raise.

8          The real question in jury selection is whether questions

9     are asked and information is provided to the venire in a way

10    that would allow all of the parties to explore bias or

11    prejudice and under the circumstances is there the opportunity

12    to ferret out the bias.  I think that under the circumstances

13    here with both the written questionnaire, which identifies the

14    specific threats against a certain grouping of people, as well

15    as the voir dire questions, a number of which address the same

16    issues, and a final question that in open court voir dire which

17    allows jurors to express any concerns whatsoever that they may

18    have -- prospective jurors that they may have about serving on

19    the jury, as well as any concerns about anything that they have

20    heard about the case throughout the proceedings today, does

21    those two things.  I think it provides enough information to

22    exercise appropriate peremptory challenges.

23         I think that asking the venire whether each of them

24    identifies as Jewish or if they have friends or family that

25    identify as Jewish creates a number of concerns with respect to

1    challenges based on race.  Asking the entire venire that

2    question I think takes this outside of bias and prejudice.

3        In addition, I do not agree that the entirety of Jewish

4    people have to feel victimized or this venire has to feel

5    victimized.  I don't think that that's actually the test.  So

6    your objection is overruled.

7        Anything further on that point?

8            MR. HALLETT:  I -- I guess I would note, Judge Levy

9    fundamentally offered to recuse himself based on the fact that

10   he identifies as Jewish.  We waived that.  I think that

11   highlights my concern.  I don't think I can say it better than

12   that.

13           THE COURT:  Thank you.  The objection is overruled.

14           MR. HALLETT:  Okay.

15           THE COURT:  I would propose that the juror

16   questionnaire if the answers to any -- to Questions 1, 2, 3,

17   4A, 5, and 6A, if any juror answers yes to any of those

18   questions that they be removed by the clerk from the pool.  Is

19   that acceptable to everyone?

20           MR. WOLFF:  It is, Your Honor.

21           MR. HALLETT:  It's acceptable to the defense.

22           THE COURT:  Thank you.  We discussed on Friday

23   actually having counsel review all of the questionnaires first

24   and that is just not really going to be feasible.  So I think

25   the first pass is just to remove all of those jurors who have

1    answered yes to any one of those questions.  We --

2           MR. WOLFF:  And, Judge, if -- if we run into an issue

3    with numbers I take it then those jurors would still be

4    available to be put back into the pool obviously with some

5    searching examination, I take it.

6           THE COURT:  Yes.  They would end up in two different

7    categories potentially.  One would be the maybe pile, and those

8    would be jurors who ended up saying no -- yes to everything

9    except no to 4A and 6A, and then the third category of

10   jurors -- so there is so-called clean jurors, just no to

11   everything, they will remain in the pool; then there are jurors

12   that are the maybe pile, maybe pool, and they are jurors who

13   may have answered no to 4A and 6A and then we need to do

14   further inquiry of those jurors; if we didn't have enough

15   jurors then theoretically jurors who answered yes to any one of

16   those questions would need to be further questioned.

17          MR. WOLFF:  Understood.

18          THE COURT:  Hopefully we won't get to that.

19      Maggie, how many jurors did we have come in today?

20          THE CLERK:  We called in 60.  I'm not sure what that

21   number is looking at.  Inevitably there is always some that

22   fall off, then there are some that don't follow the directions

23   and they report and we keep them, so we'll have a better idea

24   of what the final numbers are once everybody has checked in.

25          THE COURT:  All right.  Anything further that we need

```
 1    to do this morning?
 2              MR. HALLETT:  Not for the defense.
 3              MR. WOLFF:  No, Your Honor.  I'm not sure what the
 4    Court's pleasure is in terms of us reconvening, getting a sense
 5    for where we are.
 6              THE COURT:  So what we need to do now is have the
 7    questionnaire copied for the jurors, brought in to them, they
 8    will fill that out before they start watching a video; yes?
 9              THE CLERK:  Ideally, yes.
10              THE COURT:  Because I don't really want them filling
11    out the questionnaire when they're watching a video at the same
12    time.  Then the clerk's office, after all of that has occurred,
13    will check in with me to see where we are and what things look
14    like with the juror questionnaires.
15              THE CLERK:  And on that point, I'm happy to, once we
16    collect the questionnaires, sort them and then do we -- do you
17    want me to gather counsel and we can reconvene down here to
18    discuss how many are sort of in the clean, how many are in the
19    disqualified, how many are in the maybe pile?
20              THE COURT:  Right.
21              THE CLERK:  Okay.
22              THE COURT:  And so I would expect that that probably
23    would be maybe around 9:30.
24              THE CLERK:  That's -- hopefully, yes.
25              THE COURT:  Okay.  And then they'll watch their video
```

1   -- they'll be watching the video or will continue to watch the

2   video and if we're very lucky we can get started with selection

3   before ten.

4           MR. HALLETT:  Right.

5           MR. WOLFF:  Would the Court prefer that we remain in

6   the courthouse until -- until then?  We're -- I'm happy to,

7   whatever the Court would prefer.

8           THE COURT:  Depends on how fast you can run, right?

9           MR. WOLFF:  I think we're all fairly --

10          MR. HALLETT:  We're close.

11          MR. WOLFF:  We're all fairly close, Your Honor.

12          THE COURT:  I'm not -- I know you all are.  I'm not

13  going to mandate that you stay here in the courthouse.

14  Unfortunately there aren't great spots anymore to hang out

15  other than in here so.

16          MR. WOLFF:  Understood that's not an offer, Your

17  Honor.

18          MR. HALLETT:  Are there no rooms upstairs for counsel?

19          THE COURT:  The little rooms are still up there and

20  you're free to go up there, but you're free to go back to your

21  offices.  I know you'll -- you can all be back here in five

22  minutes so.

23          MR. HALLETT:  Okay, great.

24          THE COURT:  All right, thank you.

25          MR. HALLETT:  Thank you.

1           MR. WOLFF:  Thank you, Judge.

2           MS. RAMHARTER:  Thank you.

3       (A break was taken from 8:36 a.m. to 9:32 a.m.)

4                   (Chambers Conference.)

5           THE COURT:  All right.

6           THE CLERK:  I -- we had 59 jurors show up.

7           THE COURT:  Okay.

8           THE CLERK:  So we have 59 to work through.  All of the

9   questionnaires have been completed and sorted.  I have 38 in

10  the clean pile which represents no answers to all of the

11  questions.  There are -- I guess the next bit of good news --

12  three in the maybe pile.  And then we have 18 in the

13  disqualifying pile.  And the parties had agreed that the folks

14  who answered yes to Questions 1, 2, 3, 4A, 5, or 6A would be

15  disqualified, so the 18 that are in this stack either answered

16  yes to at least one of those questions or had multiple yesses.

17      I'm happy to, if the parties want, identify what jurors

18  are in the disqualified group so that you know what those

19  people are.  I have Juror No. 27, 161, 42, 171, 26, 148, 61,

20  44, 132, 99, 120, 127, 152, 164, 145, 74, and 162, and Juror

21  No. 68.

22          MR. HALLETT:  And that's 18?

23          THE CLERK:  Yes.  I believe again that counsel agreed

24  that those 18 would not be called forward unless there was a

25  last resort and we ran out of jurors in the clean or the maybe

1    pile, so at this point I have a seating chart which identifies

2    where all the jurors are currently seated.  It's going to take

3    a few moments to go through and basically swap out the jurors

4    who are in the panel, which is I think seats 1 through 36, to

5    make sure that's full of all clean jurors.  Jurors reported

6    randomly, jurors' questionnaires were collected randomly,

7    the -- you know, so they're in a random order.  So they'll just

8    be seated, like I said, in -- in the order of the clean first.

9         Once we've worked through all the clean jurors, then we

10   would go to the maybes, and at the end disqualifiered if we

11   unfortunately got to that stage, but hopefully we can pick

12   things using just the clean and the maybe.

13             THE COURT:  All right.  So there are just three in the

14   maybe pile, so I would suggest that you all can look at those

15   questionnaires right now.

16             THE REPORTER:  Could I get your name, please.

17             MS. STROUT:  Deb Strout.

18             MR. HALLETT:  I'm sorry, jury consultant, yes, my

19   apologies.

20             THE COURT:  That's all right, nice to meet you.

21             MS. STROUT:  Nice to meet you, thank you.

22             THE COURT:  Ms. Strout, could you pass those down to

23   me, please.  Thank you.

24        All right.  So I have been in far too many jury selections

25   where the judge didn't give the lawyers enough time to sort of

 1    sort through all of the information.  So even though obviously

 2    we don't want jurors sitting around idle for long periods of

 3    time, a couple of things.

 4        I am happy to give you time, especially now where the

 5    jurors I assume are watching their video, to sort through who

 6    is left on the panel.  Also just let you know that at the point

 7    that we get to peremptory challenges I'm not going to be racing

 8    you through that exercise.

 9            MR. HALLETT:  Good, thank you.

10            THE COURT:  I have also been in too many situations

11    where you're really not sure who you have stricken and who you

12    haven't, all right?

13            THE CLERK:  And I'm not sure if counsel is familiar

14    with or been -- I don't think I have done selection with any of

15    you since the pandemic started, but the days of sidebar at the

16    judge's bench are no more.  So we'll be using the electronic

17    digital wave headsets.  We can all be like pilots today.  They

18    are very sensitive so you whisper --

19            MR. HALLETT:  Okay.

20            THE CLERK:  -- and we can hear that.  So sidebar

21    discussions or follow-ups with jurors will be conducted

22    utilizing that headset.  And then the exercising of

23    peremptories we won't be moving back and forth between counsel

24    table anymore, again we'll just use that headset.  So Brenda

25    will identify for the, you know, whichever side whose turn it

1    is and then confirm as to who the stricken party was and we'll

2    move back and forth that way until we've got a jury.

3           THE COURT:  Maggie, the jurors who are being

4    questioned who have had yes answers, they'll come up and sit in

5    the witness box?

6           THE CLERK:  That's correct.

7           THE COURT:  And they'll be wearing their headsets as

8    well?

9           THE CLERK:  Yes.

10          MR. HALLETT:  Okay.  I -- Judge, I'm concerned about

11   the numbers here, for obvious reasons I think.  We have to get

12   36 jurors, is it, to -- before peremptories?

13          THE COURT:  Yes.

14          MR. HALLETT:  We've got 36 now plus three that -- we

15   don't have any room for any further cause really.  I mean

16   three -- three for-cause challenges and then we get into people

17   who have identified as I think we'd argue are for-cause

18   challenges.  I'm really nervous going forward with it.

19          THE COURT:  So I'm not not nervous.  All that we can

20   really do at this point, we can't bring in any more jurors now,

21   right.

22          MR. HALLETT:  Right.

23          THE COURT:  So all we can do now is go forward and

24   hope for the best.  We're obviously -- I indicated already on

25   the record and everybody agreed that the jurors who answered 1,

```
 1   2, 3, 5, 4A, and 6A yes would be out.  It would be difficult to
 2   put them in, but we would have to then spend -- before we did
 3   that we would have to spend a lot of time going through those
 4   questionnaires and determining whether we can make subgroups
 5   out of those, not an easy exercise.  So for the time being we
 6   just keep our fingers crossed.
 7            MR. HALLETT:  Okay.
 8            THE COURT:  And if we can't seat a jury.
 9            MR. HALLETT:  Right.
10            THE CLERK:  What I would say, too, is that it's been
11   our practice when we summons jurors we summons them for two
12   days, so there is a group of jurors who are essentially on-call
13   for tomorrow should for some unfortunate reason we not be able
14   to do this.
15            THE COURT:  Okay.
16            THE CLERK:  But I have not yet had a jury --
17            MR. HALLETT:  That makes a difference.
18            THE CLERK:  -- not picked in the first day --
19            THE COURT:  Very good.
20            THE CLERK:  -- in four years, so --
21            MS. RAMHARTER:  Could I clarify, was it 38 clean
22   jurors or 36?
23            THE CLERK:  Yes, 38 clean jurors.
24            MS. RAMHARTER:  38.  Okay.  Thank you.
25            MR. WOLFF:  Maggie, may I ask you a question?
```

```
 1              THE COURT:  Sure.
 2              MR. WOLFF:  Did you say 164 was one of the
 3    disqualified ones?
 4              THE COURT:  Yes.
 5              MR. WOLFF:  Okay, thank you.
 6              THE CLERK:  Yes.
 7              MR. WOLFF:  Thanks.
 8              THE COURT:  I have a question about one of the
 9    witnesses, I'm not entirely sure how to pronounce I think it's
10    a her name.  It may be a him.  It's -- it's witness 4G, Skipper
11    Geanangel?
12              MR. HALLETT:  Yes, Geanangel.
13              THE COURT:  Geanangel, all right, thank you.  And then
14    I wonder how would you like me to identify a representative
15    from Twitter, a representative from TextMe, or a representative
16    from Charter Communications?  I don't know what -- that that's
17    going to have very much meaning to a juror.
18              MR. WOLFF:  No, Your Honor.  I mean we're
19    unfortunately sort of at the mercy of the companies in terms of
20    who they would provide if we do need a representative from
21    them.  I mean in the past that -- that is how we have
22    identified them is just as a representative from one of the --
23    from one of those companies.
24              THE COURT:  All right.  So I'd probably be inclined to
25    say there may be a representative from Twitter, and TextMe,
```

```
 1    from Charter Communications, is there anybody at any of those
 2    entities that you know?
 3            MR. WOLFF:  I think that's -- I think that works, Your
 4    Honor, yes.
 5            THE COURT:  Great.  Maggie, if we got to a point where
 6    we had say eight jurors seated and needed to bring in jurors
 7    tomorrow, we would just bring that -- that group of eight
 8    back --
 9            THE CLERK:  Yep.
10            THE COURT:  -- and the venire for tomorrow?
11            THE CLERK:  Mm-hmm.
12            THE COURT:  All right.
13            THE CLERK:  I think I have everyone pretty well
14    swapped out.  I just have one person that I can't seem to
15    locate on here.
16        Judge, do you have the maybe pile?
17            THE COURT:  Yes.
18            THE CLERK:  Maybe that's where it is.  All right.
19            THE COURT:  Okay.
20            THE CLERK:  I will work on getting a clean set of the
21    seating chart for everybody.
22            MR. HALLETT:  Great.
23            THE CLERK:  The top left-hand number will represent
24    the juror number, the bottom right-hand corner in red will
25    represent the seat number, so that will be important when we go
```

 1    through exercising peremptories.  I'll make sure to leave those

 2    on counsel tables.  And we'll get jurors moved around, do a

 3    little musical chairs.

 4          MR. HALLETT:  One thing I should have asked earlier,

 5    did you get a -- did you get returned all of the questionnaires

 6    that were sent out by mail?

 7          THE CLERK:  There I believe are two questionnaires

 8    that jurors completed this morning and Brenda has already made

 9    copies of those questionnaires and left them on counsel table

10    for you.

11          MR. HALLETT:  Thank you.

12          THE CLERK:  You're welcome.

13          THE COURT:  All right.  Do we have any idea at what

14    stage the jurors are at right now?  I'm just trying to decide

15    whether you all can leave again and come back again.

16          THE CLERK:  Well, I -- I think it would probably be

17    better if counsel stayed in the building and close by.  I know

18    they were watching the video when I came down --

19          THE COURT:  All right.

20          THE CLERK:  -- so I suspect that they're pretty close

21    to -- to wrapping that up.

22          THE COURT:  All right.  And then are you going to give

23    them a break after the video?

24          THE CLERK:  I think we'll give them -- they should get

25    a break.  I'm just debating on whether or not I have them take

 1    their break and come back before I move them or after because I

 2    want to make sure that they sit where they're supposed to sit,

 3    so.  They always tend to forget sometimes when you have to

 4    shuffle them around.  So I may get everybody moved around and

 5    then give them the -- the opportunity for a quick break.

 6            THE COURT:  All right.  I think that would be a good

 7    idea.  If we get into selection and go for more than a couple

 8    of hours, I'm just worried about some of the jurors.  In

 9    particular I think there are a couple who might have expressed

10    some difficulty about sitting for long periods of time or

11    needing to use the restroom, so is there a set time after we

12    start or a set amount of time after we start that we would take

13    a break if we're not close?

14            THE CLERK:  I think it -- I've seen it done a couple

15    of ways.  Sometimes the judge like if you think that it's gone

16    on too long I've seen, you know, the judge ask jurors whether

17    they would like to take a break or push on, sometimes they just

18    want to push on.

19            THE COURT:  Sure.

20            THE CLERK:  So --

21            THE COURT:  We'll keep an eye on them.

22            THE CLERK:  Yeah.  But there is -- you know, there is

23    snacks and stuff out there for them, too.  So if we give them a

24    break here now then I think they should be good for a few

25    hours.

```
 1              THE COURT:  Okay, good.

 2              MR. HALLETT:  Great.

 3              THE COURT:  All right, thank you, all.

 4              MR. WOLFF:  Thank you, Judge.

 5              MR. HALLETT:  Thank you.

 6         (A break was taken from 9:55 a.m. to 10:36 a.m.)

 7                 (Open Court.  Defendant Present.)

 8              THE COURT:  Good morning, everyone.  I think it's

 9    still morning.  I'm Judge Karen Wolf, and I will be presiding

10    over jury selection today for a criminal case called United

11    States versus Brian Dennison.  I believe you have already been

12    introduced to Maggie Melanson and Brenda Boucher who are our

13    jury administrators.  Tammy Martell is our court reporter.

14         Can everyone hear me okay?  All right.  If at any point

15    during today's proceedings you can't hear me, please just stand

16    up, raise your hand, speak out.

17         Madame clerk, would you please administer the oath.

18              THE CLERK:  Jurors, please stand and raise your right

19    hand.  Do each of you solemnly swear that you will truly answer

20    all questions put to you by the Court regarding your ability to

21    serve on the jury to be drawn today and that you do this under

22    the pains and penalties of perjury?

23              PROSPECTIVE JURORS:  Yes.

24              PROSPECTIVE JURORS:  I do.

25              THE CLERK:  Thank you, you may be seated.
```

1          THE COURT:  All right.  So, first of all, I want to

2    thank you all for your patience this morning.  This is a long

3    process sometimes, but it's a very important process to the

4    administration of justice.  As Chief Justice Roberts of the

5    Supreme Court of the United States explained in the video that

6    you just watched about jury empanelment, jury trials are a

7    critical function of the court.  Criminal defendants and some

8    civil litigants have a constitutional right to a trial by jury.

9          Today we will be choosing from the entire group of you 16

10   people who will serve in our criminal case.  I know the video

11   just explained the process and I won't repeat it, but I will be

12   asking you questions that you have a duty to answer truthfully.

13   This process is also called voir dire which comes from the

14   French language and it means to speak the truth.  The purpose

15   of voir dire is to seat a wholly fair and impartial jury from a

16   cross section of the community.

17         After my questions and your answers, the attorneys will be

18   deciding who should be challenged for cause.  That means that

19   there is a specific reason because a juror may not be able to

20   be fair and impartial, that juror may be challenged for cause.

21   Also, the attorneys will decide how they wish to exercise

22   something called peremptory challenges, and those are

23   challenges for which the attorneys need provide no reason.

24         Just as it is vitally important that we honor the

25   litigants' constitutional rights to a trial by jury, it is also

1    critical that we protect all of you who have responded to the

2    call of your duty as citizens of the United States.  To do

3    that, we have made a number of changes here in the courthouse

4    and the courtroom and the process to reduce the risks

5    associated with COVID 19.

6         We are following guidance provided by the CDC and our own

7    epidemiological expert.  We have upgraded our air handling

8    systems in the courthouse, and we are monitoring the quality of

9    the air that you are breathing.

10        We will also be using headsets when we need to have

11   private conversations with just one potential juror, or just

12   the attorneys and myself, instead of all huddling together at

13   sidebar.  And that means over in this corner or this corner in

14   the old days, before the pandemic, the attorneys and even a

15   juror who might be questioned would come up and huddle

16   together.  We won't be doing that.  We'll be doing this via

17   headsets to keep everybody safe.

18        We are requiring, as you can see, everyone to wear a mask.

19   Masks of course should cover both your nose and your mouth, and

20   I want to thank you for being willing -- being willing to

21   assist us.

22        We will also be following these protocols at trial.  Masks

23   must be worn by everyone at all times except that witnesses may

24   remove their masks to testify after -- after they are seated in

25   the witness chair.  Counsel may remove their masks when

1   questioning witnesses or during opening statements or closing

2   arguments provided that appropriate distance is maintained.

3   And the judge will be unmasked when instructing the jury.

4       Anyone who is unvaccinated will be required to always keep

5   their mask on at all times.

6       We have moved a group of 36 of you to the front of the

7   courtroom.  If you are seated in the front you have -- you have

8   already been randomly subjected -- selected, sorry, as the

9   first group of prospective jurors who we will be questioning

10  during challenges for cause.  I will be asking you a number of

11  questions to determine if you have any knowledge or biases

12  about this case.  Your answers, which you will give upon the

13  oath that you just took, will enable me to determine whether

14  any prospective juror must be excused for cause.

15      To give you some idea, if one of you is related to a party

16  in the case or if you have been represented by one of the

17  lawyers, you could be excused for cause.

18      I emphasize to you that even if you are not challenged, if

19  for any reason at all you feel that you cannot be fair and

20  impartial in the consideration of this case, it is your duty to

21  inform me of that fact.

22      As I ask questions, please treat each one as being

23  directed to you personally.  I will try to phrase my questions

24  in a way that allows a yes or a no answer.  Unless I indicate

25  otherwise, if the answer to the question that I ask is no you

should simply remain seated and doing nothing and our court reporter will record your answer as being no.  In other words, your silence in response to the -- to a question will be taken to mean no.  If your answer to a question is yes, you should stand and give your juror number when asked.  Not your name, your juror number.  Please do not volunteer any other information unless I specifically ask you for a more detailed explanation of your answer.  We do not want anyone to say something out loud that might prejudice the other members of the jury panel in any way.

In this case I anticipate that most if not all of the follow-up questions will be asked at sidebar, and at sidebar means that one or more of you will be asked to come up to sit in the witness chair, I will put my headphones on, you will put your headphones on, the lawyers will have their headphones on.

So we will be keeping track of who answers yes to any question, and after we get through a set of questions we will ask individual jurors who had a yes answer to come forward one at a time to the witness stand.  We'll give you the headset and I will ask you follow-up questions.  The lawyers will have their headsets on and they will be able to hear your answers.  The headsets are very sensitive, you can speak at a relatively low volume and it will be heard; but I -- I guarantee you that someone, probably our court reporter, will tell us if she can't hear us.

1      On occasion I may ask you to elaborate on an answer in

2  open court.  Please understand that nothing that I ask is

3  intended to embarrass you or interfere with your privacy.  If I

4  ask you something in open court and you would like to answer

5  privately, simply inform me of that and I will invite you to

6  come forward.

7      Now, for those of you who are not seated in the front of

8  the courtroom, we need you to follow along with the

9  questioning.  Remember what I said, 36 of you who are in the

10  front have already been randomly selected and may be called up

11  to answer questions; however, as we move through the

12  questioning some of you in the back may be asked to come and

13  take the place of others in the front.  So for those of you in

14  the back please follow along with the questioning.

15      Each of you has been provided with a paper and a pen to

16  allow you to make whatever notes you need to to ensure that you

17  will be able to tell me not only if you have answered any of

18  the questions in the affirmative but also which ones and why.

19      There are 19 questions for this case, so I'm going to ask

20  you to take a sheet of paper and write numbers one through 19

21  down on it now.  This will speed things up if you do get called

22  upon to replace a juror who has been dismissed for cause.  All

23  right, very good.

24      If any time -- if at any time anyone is having difficulty

25  hearing any of the speakers, please let me know and -- right

1    away by calling out or standing up.  It's important that each

2    of you is able to hear everything that is being said in the

3    courtroom during this process.

4        All right.  I'm now going to talk to you about this case.

5    The case is called United States versus Brian Dennison.  In

6    this criminal case, the United States Government has charged

7    the defendant with one count of transmitting a threatening

8    interstate communication.  Mr. Dennison is charged in a

9    single-count indictment that alleges that on or about

10   September 8, 2021, the defendant knowingly and willfully

11   transmitted in interstate commerce a threat to injure the

12   person of another.  Specifically that he used the internet to

13   post on Twitter the statement, quote, I'm going to kill Jews

14   with my AR-15 tomorrow, end quote, in violation of Title 18 of

15   the United States Code Section 875(c).

16       The indictment is simply a description of the charge

17   against Mr. Dennison; it is not evidence of anything.

18       Mr. Dennison pleaded not guilty to the charge -- charge

19   and denies committing the crime.

20       I will now ask counsel for the Government to introduce

21   themselves and identify anyone who will be associated with them

22   in the case.

23            MR. WOLFF:  Thank you, Your Honor.  Your Honor, may I

24   remove my mask temporarily?

25            THE COURT:  Yes, you may.

1          MR. WOLFF:  Thank you.  Good morning, ladies and

2    gentlemen.  My name is Craig Wolff.  I am an Assistant United

3    States Attorney with the U.S. Attorney's office here in

4    Portland.  The U.S. Attorney is Darcie McElwee.  Seated with me

5    at counsel table is Task Force Officer Jonathan Duquette who is

6    with the Federal Bureau of Investigation.  Mr. Duquette is also

7    a border patrol agent with the U.S. Border Patrol.  Co-counsel

8    in the case for the Government will be Johnathan Nathans.  He

9    is also an Assistant United States Attorney but he was unable

10   to be here today.  And you may also see two other members of

11   the U.S. Attorney's Office periodically during the trial,

12   Katherine Whalen and Peggy Milashouskas.  Thank you, Your

13   Honor.

14          THE COURT:  Thank you, Mr. Wolff.

15      I now ask counsel for the defendant to introduce

16   themselves and their law firm, their client, and anyone who

17   will be associated with the case.

18          MR. HALLETT:  Thank you.  Hello.  My name is Tom

19   Hallett.  I'm with the law firm Hallett, Whipple & Weyrens.  I

20   would like to introduce now Brian Dennison who is the

21   defendant.  Stand up, please, take your mask off.  Thank you.

22      I have with me at counsel table Deb Strout who is

23   assisting me, and then Jordan Ramharter who is an attorney with

24   my office, and Grainne Dunne who is also an attorney with my

25   office, and they'll be assisting throughout the trial.  Thank

1    you.

2          Your Honor, there may be an additional paralegal who will

3    be assisting and her name is Kiersten Van Syckle.

4                THE COURT:  Thank you, Mr. Hallett.

5                MR. HALLETT:  Thank you.

6                THE COURT:  All right, so now I'm going to begin the

7    questioning.  As I said, there are 19 questions.  Please follow

8    along carefully.  If you are among the 36 people in the front

9    of the courtroom and have an affirmative answer or yes answer

10   to any question, you will need to stand.

11         If you are not in the front of the courtroom, if you have

12   an affirmative answer to any question please write on your

13   paper for that question that you have a yes answer.

14         I will be asking questions -- you questions not only about

15   you but also about what you know to the best of your knowledge

16   about close friends and immediate family.  Immediate family

17   means members of your household, that is people who live under

18   the same roof as you, plus any child, parent, sibling,

19   grandparent, or grandchild living outside of your home.

20         Those of you in the front of the courtroom, if you have a

21   yes answer to any of the following questions, please stand and

22   we will take your juror number.

23         The first question is:  Do you know from any source

24   anything about this case?

25         Yes, sir, what is your juror number?

1          JUROR 140:  140.

2          THE COURT:  Ma'am, your juror number, please?

3          JUROR 131:  131.

4          THE COURT:  Thank you.  All right, we're going to move

5    on to the next question.  So I'm going to be grouping the

6    questions so that we're not dealing with one question at a time

7    to call folks up.  So we won't do all 19 in a row, but we'll do

8    a handful in a row before I call anybody up to have some

9    further discussion.

10         Question No. 2.  Do you or a member of your immediate

11   family or a close friend know or have you had any contact with

12   the Defendant Brian Dennison or any member of his family?  All

13   right, thank you.

14         You will see as we go through this process, ladies and

15   gentlemen, that the attorneys will look around at you.  I know

16   that that probably feels a little odd.  I -- I -- I want you to

17   know that this is just part of the process.  The lawyers are

18   seeing you for the first time, they want to know who is

19   standing, who is answering questions in the affirmative.  So

20   please don't think that the attorneys or the clients are being

21   rude in any way to you.

22         All right, Question No. 3.  Do you or to your knowledge

23   does a member of your immediate family or any close friend know

24   any of the lawyers in this case or the associates that they

25   have just introduced?

1          Yes, ma'am, your juror number, please?

2               JUROR 123:  123.

3               THE COURT:  Thank you.  All right.  And if at any time

4     I miss someone and move on to the next question, flag me down

5     so we can get back to it.

6          All right, I'm now going to go over a list of witnesses

7     with you, and I'll go through a few at a time so that if

8     necessary you can take notes.

9          During the trial we expect that witnesses will be called

10    to testify.  Do you know or have you had any contact with the

11    following:  Jessica Ricker of Buxton, Maine; Florice or Risa

12    Dennison of Buxton, Maine; John Dennison of Buxton, Maine;

13    Nathan Gagne of Hollis, Maine; Jacob Barney of East Waterboro,

14    Maine; Roxanne Farmer of Monmouth, Maine; Skipper Geanangel of

15    Standish, Maine; Cheryl Roy Stateville of Standish, Maine;

16    Heather Mains of Buxton, Maine; Karen Carlson of Gray, Maine;

17    Emma James of Westbrook, Maine; Harris Weeks of Tucson,

18    Arizona; Frederick Witt of the Federal Bureau of Investigation

19    or the FBI; Jordan Holt of the FBI; Jonathan Duquette of the

20    FBI and the U.S. Border Patrol; Maurice Drouin of the FBI and

21    the Androscoggin County Sheriff's Office; Joshua Borges of the

22    FBI and the U.S. Customs and Border Protection; Kristina Troxel

23    of the FBI; Christopher White of the FBI; Nathan Wilkins of the

24    FBI; Garrett Drew of the FBI; Thomas Ventresca from Howell's

25    Indoor Range and Gun Shop in Gray, Maine.  There also may be

1    three representatives or more from Twitter, Text Me, or Charter

2    Communications.  If you know anyone from Twitter, TextMe, or

3    Charter Communications, please stand.

4         All right.  We're going to move off witnesses now, but

5    what I would like to do is have Juror No. 140 come to the

6    witness stand, please.

7                         (Sidebar Conference.)





```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10          (Discussion off the record with clerk.)

11                        (Open court.)

12          THE COURT:  Would Juror No. 131 come forward, please.

13                    (Sidebar conference.)

14

15

16

17

18

19

20

21

22

23

24

25
```







1

2

3

4

5

6

7

8

9

10

11

12

13

14      (Discussion off the record with the clerk.)

15                    (Open court.)

16      THE CLERK:  Juror No. 131, if you can stand, collect

17  your belongings, and I'll have you swap seats with Juror No.

18  84.

19      And Juror No. 84, have you had any affirmative answers to

20  any of the questions posed so far?

21      JUROR 84:  No.

22      THE CLERK:  Thank you.

23      THE COURT:  Thank you.  Would Juror 123 please come

24  forward?

25                    (Sidebar conference.)





22                        (Open court.)

23          THE COURT:  Okay, we're going to go on to the next

24   series of questions.  This is Question No. 5.  There may be

25   testimony from law enforcement officers in this case.  Is there

```
 1   anything about law enforcement witnesses that would lead you to
 2   credit their testimony any more or any less than the testimony
 3   of a lay or non law enforcement witness just based on the fact
 4   that they are law enforcement officer or officers?
 5        Let me just state that again.
 6        You can -- you can stand, thank you, ma'am.
 7        There may be testimony from law enforcement officers in
 8   this case.  Is there anything about law enforcement witnesses
 9   that would lead you to credit their testimony any more or less
10   than the testimony of a lay non law enforcement witness just
11   based on the fact that they are law enforcement officers?
12        All right.  Ma'am, since you were the first to stand what
13   is your juror number?
14             JUROR 111:  111.
15             THE COURT:  Thank you.  All right.  Ma'am, your
16   number?
17             JUROR 30:  30.
18             THE COURT:  I'm sorry?
19             JUROR 30:  30.
20             THE COURT:  Thank you.  Two other people were
21   standing, I believe.  Yes, sir.
22             JUROR 171:  My juror number is 171.
23             THE CLERK:  They are not part of the 36.
24             THE COURT:  30 is though.  Is No. 30?
25             THE CLERK:  30 is.
```

1          THE COURT:  Thank you.  So, sir, if you just make a

2     note in the event that you are -- you replace somebody in the

3     front of the courtroom, just make a note next to the question.

4     It was Question No. 5.

5          All right.  Question No. 6.  Have you or any of your close

6     friends or immediate family ever had a positive or negative

7     experience with the criminal justice system that would affect

8     your ability to be fair and impartial?

9          All right, this is Question No. 7:  Have you or any of

10    your close friends or immediate family ever been the victim of

11    a crime?

12         Yes, sir, what is your juror number?

13         JUROR 154:  154.

14         THE COURT:  Thank you.  All right.  Let's go to

15    sidebar.  Juror No. 111, would you please come forward.

16                    (Sidebar Conference.)

17    ████████████████████

18    ████████████████████

19    █████████████████████████████

20    ████████████████████

21    ████████████████████████████████████████████

22   ███████████████████████████████████████

23   █████████████████████████████████████████████

24   █████████████████████████████████████████████

25   ███████████████████████████████████████████





15                    (Open court.)

16       THE COURT:  Would Juror No. 30 please come forward.

17       THE CLERK:  Tom, your mic is on.

18       MR. HALLETT:  Sorry.

19                    (Sidebar Conference.)





```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21                    (Open court.)
22    THE COURT:  Would Juror No. 154 please come forward.
23                    (Sidebar Conference.)
24
25
```





1 ████████████████████████████████

2 █████████████████████████████████████

3 ████

4 █████████████████████████████████████

5                    (Open court.)

6            THE CLERK:  Juror No. 111, have you stand, collect

7 your belongings, and switch seats with Juror No. 83.

8       Juror No. 83, have you had any yes answers to any of the

9 questions so far?

10           JUROR 83:  No.

11           THE CLERK:  Thank you.

12           THE COURT:  Thank you.  All right.  We're on to

13 Question No. 8.  Are you a vendor or contractor for the United

14 States Government or do you work for one?

15       Yes, sir, what's your juror number?

16           JUROR 110:  110.

17           THE COURT:  Thank you.  All right, I'm going to ask

18 you a series of questions that go together, so No. 9 is as

19 follows:  In a trial the judge instructs the jury on the law

20 and as a juror you will be required to follow the law whether

21 you agree with it or not.  You will be instructed that the fact

22 that the defendant has been arrested and charged, that is

23 accused of a crime, is no evidence whatsoever of his guilt and

24 is not to be considered by you in any way in determining -- in

25 determining whether he is guilty or not guilty.

1          Is there anyone who could not -- who could not or would

2     not follow this instruction?

3          Is there anyone who didn't understand the question?

4          Yes, ma'am, please stand.

5               JUROR:  Could you just repeat the question?

6               THE COURT:  I certainly can.  In a trial the judge

7     instructs the jury on the law and as a juror you will be

8     required to follow the law whether you agree with it or not.

9     You will be instructed that the fact that the defendant has

10    been arrested and charged, that is accused of a crime, is no

11    evidence whatsoever of his guilt and is not to be considered by

12    you in any way in determining whether he is guilty or not

13    guilty.  Is there anyone who could not or would not follow that

14    instruction?

15         All right, this is Question No. 10.  You will be

16    instructed that every defendant has a constitutional

17    presumption of innocence and the Government bears the burden of

18    proving that the defendant is guilty beyond a reasonable doubt.

19    Is there anyone who could not or would not follow that

20    instruction?

21         All right, this is Question No. 11.  You will be

22    instructed that every defendant in a criminal case has the

23    constitutional right not to testify and no inference or

24    suggestion of guilt whatever may be drawn from the fact that a

25    defendant elects not to testify.  Is there anyone who could not

1    or would not follow that instruction?

2        And is there anyone who didn't understand that question or

3    would like it read again?

4        The next question is No. 12.  You will be instructed that

5    you must base your verdict solely and exclusively on the

6    evidence and on the law as presented in the courtroom and your

7    verdict must not be influenced by sympathy, passion, or

8    prejudice or by anything that you may have read, seen, or heard

9    outside the courtroom.  Is there anyone who could not or would

10   not follow that instruction?

11       All right, we're up to No. 13.  You will be instructed

12   that you cannot do any research about the participants and

13   issues in this case which means for instance that you may not

14   read articles, read or watch news reports, listen to news

15   reports, do Google or other internet searches, or peruse or

16   look at social media for information about this case.  Is there

17   anyone who could not or would not follow that instruction?

18       Is there anyone who would find it difficult to follow that

19   instruction?

20       All right.  Question No. 14.  Recognizing that a criminal

21   jury must reach its verdict unanimously, would you tend to feel

22   an obligation to reach a certain verdict solely because it was

23   consistent with the vote of the majority of your fellow jurors?

24       All right, we're on to No. 16.  Nope, 15.

25               PROSPECTIVE JUROR:  15.

1          THE COURT:  Wishful thinking.  All right.  Fifteen.

2     Do you have any political, religious, moral, or philosophical

3     beliefs or opinions about our system of criminal justice that

4     would affect your ability to render a fair and impartial

5     verdict?  Fair and impartial to both the Government and the

6     defendant in this case.

7          Do you have any political, religious, moral, or

8     philosophical beliefs or opinions about our system of criminal

9     justice that would affect your ability to render a verdict fair

10    and impartial to both the Government and to the defendant?

11         Sixteen.  Do you have a medical or physical condition such

12    as difficulty seeing or hearing or sitting for long periods of

13    time that would make it difficult or uncomfortable for you to

14    listen to the testimony, observe the witnesses, or otherwise

15    sit as a juror in this case?  Yes, sir?

16         JUROR 157:  157.

17         THE COURT:  137?

18         JUROR 157:  50.

19         THE COURT:  157, thank you.

20         Number 17.  And this is where you get to look around and

21    not just the jurors -- not just the lawyers.  Are you related

22    to or do you work with any other member of the jury?

23         All right.  Ma'am.

24         JUROR 108:  108.

25         THE COURT:  108, thank you.  Yes, ma'am.

```
 1            JUROR 130:  130.

 2            THE COURT:  Yep.

 3            PROSPECTIVE JUROR:  How closely related?

 4            THE COURT:  So why don't just give me your juror

 5   number and we'll come talk about it.

 6            PROSPECTIVE JUROR:  I'm in the back.

 7            THE COURT:  Pardon?  Oh, you're in the back.  All

 8   right, thank you.  Make a note of that, sir.

 9        All right.  I'm going to talk to you about the schedule in

10   the case.  The trial of this case will begin -- and this is

11   Question No. 18.  The trial of this case will begin on Monday,

12   May 23, 2022, and it is estimated to require approximately

13   three days.  Chief Judge Jon Levy will be the presiding judge.

14   His typical trial day runs from 8:30 a.m. until 2:45 p.m. with

15   a 15-minute break in the morning and a 30-minute lunch break.

16   You may bring food with you to eat during either break or both

17   breaks.  On the day the case is entrusted to the jury for

18   deliberations on a verdict, the jury will most likely be

19   required to stay beyond 2:45 p.m.  Given the anticipated trial

20   schedule, is there any reason why you would not be able to

21   serve as a juror in this case?

22        Yes, ma'am.

23            JUROR 167:  167.

24            THE COURT:  Thank you.  All right.  We're at No. 19.

25   This is the final question, and as I ask this question I ask
```

1    that you reflect on everything that we've discussed so far

2    about the case, about the evidence that may come in in the

3    case, and -- and about the questions that have been asked so

4    far.  Given what you have learned about the issues in this

5    case, is there anything -- anything at all that gives you

6    concern about serving on the jury or any reason whatsoever that

7    you could not be completely fair and impartial toward both the

8    Government and the defendant?

9           Yes, sir, what is your juror number?

10              JUROR 151:  151.

11              THE COURT:  Is he in the back?

12              THE CLERK:  He's in the back.

13              THE COURT:  All right.  Sir, if you would just make a

14   note of your affirmative answer for No. 19.

15              JUROR 39:  Number 39.

16              THE COURT:  I'm sorry?

17              JUROR 39:  Number 39.

18              THE COURT:  Thank you.  All right.  We're going to go

19   to sidebar now and I would ask that Juror No. 110 come forward.

20                   (Sidebar Conference.)

21

22

23

24

25





```
 1                ████████████████████

 2                      (Open Court.)

 3        THE COURT:  Juror No. 157, would you come forward?

 4                  (Sidebar Conference.)

 5                ███████████████

 6                ████████████████████████████

 7                █████████████████████

 8                ██████████████████████████████████

 9        ██████████████████████████████████████████

10        ████████████████████████████████████████████

11        ████████████████████████████

12                ███████████████████████████████████████

13        ████████████████████████████████████

14                ██████████████████████████████████

15        █████████████████████████████████████████

16        ████████████

17                ██████████████

18                ████████████████████████████████

19                ██████████████████████████████████

20        ████████████████████████████████████████

21                ███████████████████████████████████████

22        █████████████████████████████████████████

23        ██████████

24                ████████████████████████████████

25                ██████████████████
```





```
10                    (Open Court.)

11      THE COURT:  Juror No. 108, could you come forward.

12                (Sidebar Conference.)
```





 4                        (Open Court.)

 5        THE COURT:  Would Juror No. 130 come forward.

 6                   (Sidebar Conference.)



17                    (Open Court.)

18    THE COURT:  Would Juror No. 167 come forward.

19              (Sidebar conference.)

















1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22          (Discussion off the record with the clerk.)

23                    (Open court.)

24          THE CLERK:  Okay, the following jurors can you please

25   stand and collect your belongings and I will have you do a

1  little seat swap again.  Juror No. 154 and Juror No. 51, if 51

2  could come forward.  And then Juror No. 157 if you could stand

3  and swap with Juror 52.  52.  And then Juror 167 if you can

4  stand and switch with Juror 64.  Six four.  And last the last

5  one, Juror No. 39 if you can stand and swap with 162, one six

6  two.

7                    (Discussion off the record with the clerk.)

8                          (Sidebar conference.)





1

2

3

4

5                    (Open court.)

6          THE COURT:  Ready?

7          THE REPORTER:  Yes, thank you.

8          THE COURT:  We all have to know that the most

9    important person in the courtroom is the court reporter because

10   we can't do anything without her.

11        So Juror No. 51 please come forward.

12                    (Sidebar conference.)

13

14

15

16

17

18

19

20

21

22

23

24

25







25      (Open court.)

1          THE COURT:  Juror No. 52, would you come forward,

2    please.

3                    (Sidebar conference.)













1

2

3

4

5

6

7

8

9

10

11

12

13

14                         (Open court.)

15          THE COURT:   Would Juror No. 64 please come forward.

16                         (Sidebar conference.)

17

18

19

20

21

22

23

24

25













19                        (Open court.)

20          THE COURT:  All right.  Ladies and gentlemen, we are

21   going to take a break now.  I'm not going to let you all leave,

22   but the lawyers and I have some things that we need to discuss

23   so that we can complete the selection.  So I am not exactly

24   sure how long it's going to take, but it will probably take at

25   least a half an hour.  So while we're doing that jurors can

1    feel free to -- can they leave and get something to eat or do

2    you want them to stay here?

3            THE CLERK:  That's a good question.

4            THE COURT:  Yeah, all right.  So probably everybody is

5    hungry, too, right?  So I'm going to give you all the chance to

6    leave the courtroom so long as you can be back within one half

7    hour.

8        Is there any objection, counsel, to that occurring?

9            MR. WOLFF:  No, Your Honor.

10           MR. HALLETT:  No, Your Honor.

11           THE COURT:  All right.  I am, however, going to

12   caution you that you are not to talk to anyone about the

13   selection process today.  You're not to speak with each other

14   about that.  You're not to look at your phone, look up anything

15   about the participants in this case, or this case at all.  It's

16   very, very important that you not do that.  I'm going to ask

17   that you all be back here in the courtroom at 1:00 in your

18   seats, in the same seats that you left, and then we'll proceed

19   from there as to what's going to happen for the rest of the

20   afternoon.

21       I also just want to apologize to all of you that this is

22   taking perhaps a long time, but it's very important to all of

23   the participants in the case that we proceed as slowly and

24   methodically as we need to to seat a wholly impartial and fair

25   jury.  So thank you very much, court will be in recess.

 1            (A break was taken from 12:30 p.m. to 12:32 p.m.)

 2                      (Chambers conference.)

 3            THE COURT:  All right.  So has everybody had a --

 4    we're in a brand new thing, right?  All right.  We're here on

 5    United States versus Dennison, case number 21-CR-149, for a

 6    conference in the middle of jury selection.

 7        Has everyone had a chance to review the questionnaires

 8    that the clerk's office pulled out?

 9            MR. HALLETT:  For the defense, yes.

10            MR. WOLFF:  Yes, Your Honor.

11            THE COURT:  Okay.  So it seems to me that anybody who

12    has answered yes to 1, 2 or 3, even if there was only one yes

13    answer in 1, 2 or 3, can't go back into the pool, agreement on

14    that?

15            MR. WOLFF:  Yes, Your Honor.

16            MR. HALLETT:  I agree with that, yes.

17            THE COURT:  Okay, we're moving to the rest, all right,

18    and then we'll figure out what we're going to do from here.

19        So I did out of this -- how many jurors do we need?  Are

20    we four down?

21            THE CLERK:  We're I think missing three.

22            THE CLERK:  One of them has already swapped seats, so

23    we do have one out of the disqualifier pile already in a seat.

24            THE COURT:  Which juror number is that, do you know?

25            THE CLERK:  I believe it was 84.

```
1              MR. HALLETT:  So we've got one maybe in a seat?

2              THE CLERK:  No.

3              THE COURT:  No.  We have no maybes, they're all gone.

4              THE CLERK:  We have one disqualified that we have

5    pulled up with the maybes.

6              MR. HALLETT:  But we haven't questioned them yet.

7              THE CLERK:  Correct.

8              THE COURT:  Let's just see if they're -- I don't even

9    know if they're in this pile.

10             THE CLERK:  I apologize, it was not 84.  I believe it

11   was 162.

12             THE COURT:  Oh, I just passed that one.  Maybe not.

13   162, it's the first one, has answered yes to questions 1 and 2,

14   no to question 3, yes to question 5 which is regarding assault

15   rifles.

16        So in this stack I have for purposes of discussion tagged

17   four which are Juror Nos. 99, 132, 61, and 161.

18             MR. HALLETT:  I have 26.

19             MS. RAMHARTER:  I do, too.

20             THE COURT:  That you -- what about 26?

21             MR. HALLETT:  That did not have any yesses in the

22   first --

23             THE COURT:  Okay.

24             MR. HALLETT:  -- in the first three.

25             THE COURT:  Did I miss that one?
```

 1          MR. HALLETT:  Now, with that said.

 2          THE COURT:  Yep.  So let me hear from everyone

 3    regarding the answers to questions other than the 1, 2, 3 what

 4    your position is on having anybody who has answered a yes to

 5    one of those other questions, 4, 4A, 5, 6, or 6A, go back into

 6    the venire.  Mr. Wolff?

 7          MR. WOLFF:  Your Honor, I -- it's -- it seems that in

 8    the -- in the usual course somebody who would answer a question

 9    like that would be somebody who would be at least talked to and

10    kind of flesh out where they're coming from.

11          THE COURT:  Mm-hmm.

12          MR. WOLFF:  I think that -- I think that there are

13    different -- qualitatively different question than one, two and

14    three.

15          THE COURT:  What's your position, Mr. Hallett?

16          MR. HALLETT:  I mean I think that you asked a limited

17    number of written questions for -- for a purpose and that was

18    to identify the ones that really are important to the case, and

19    I think that sporting or assault rifles is -- is really, really

20    an issue in this case.  I'm deeply concerned that -- about a

21    number of things in this case but certainly that the assault

22    rifle is going to really make jurors nervous, that they're

23    going to render a decision not based on the threat but on the

24    fear that he was intending to commit the act.

25          I think everyone that's indicated that they are -- cannot

1    be fair and impartial with respect to a case involving assault

2    rifles combined with the other stuff, I -- us now trying to go

3    back and -- and convince them to be fair and impartial, when

4    they've already indicated that they can't be, is a big mistake.

5    So that's my thought on it.

6        And I look at -- in any event, I mean you've got gun

7    violence with some of these people which also knocks them out,

8    No. 26 in any event.  Number 161 has a couple of odd answers

9    but he answers 6A that he could not be fair and impartial.

10       So I -- I -- I think we're going down a wrong path here,

11   and I -- I understand why we're exploring it, but that's --

12   that's the defense's position.  I think it's just -- you know,

13   we asked them written questionnaire so that they'd answer

14   honestly.  Now that they've answered honestly now we want to go

15   back and see if they'll give us another answer for the benefit

16   of us proceeding forward with this case.  I -- that's

17   wrongheaded.  If -- particularly since we could bring in more

18   jurors tomorrow.  Which I admit is more work for everyone

19   involved, but that strikes me as a much better course of

20   action.

21            THE COURT:  All right.  Much as I don't want to do

22   this, and much as Ms. Melanson and Ms. Boucher will be unhappy

23   with me, I don't -- I agree with the defense position.  I don't

24   think that we can take jurors who have already -- every one of

25   the jurors that we've tagged here as being at least available

1   for discussion has indicated with a yes answer that they can

2   not be fair and impartial.  The gun issue, the assault rifle

3   issue in particular, is integral to the case, and I think that

4   there is no option but to bring in more jurors tomorrow and try

5   to get a wholly fair and impartial jury which is what our job

6   is.

7        So how do we do that?

8             THE CLERK:  Sure.  So we do have a number of jurors

9   on-call for tomorrow.  We essentially have put all the jurors

10  today, in addition to the extra ones who we uploaded the

11  questionnaires for to total 100, those are all currently

12  on-call with instructions to call in tonight to see if they're

13  required to report tomorrow.

14            THE COURT:  So we theoretically have approximately 40

15  jurors?

16            THE CLERK:  Correct.

17            THE COURT:  And is there 41 because somebody was a no

18  show today?

19            THE CLERK:  There is a mix of some have been excused

20  out of those and some --

21            THE COURT:  Okay.

22            THE CLERK:  -- we have a few extras today, so it's

23  hard to tell without going and looking.

24            THE COURT:  All right, so approximately 40.  Hopefully

25  if things run about the same as they did today that should --

1    we should be able to seat a jury tomorrow.  So what I would

2    plan to do is bring the jury -- bring the jurors back in the

3    room now for -- at one, although it's going to take a little

4    longer than one because they can't all get through security at

5    exactly the same minute, and explain to them that we -- we need

6    to bring more jurors in in order to seat a jury and that the 36

7    in the box need to come back.

8         Nobody else needs to come back?

9         THE CLERK:  Judge, would -- some of the people that

10   are in that 36 are people that were just challenged for cause.

11        THE COURT:  Okay.

12        THE CLERK:  So I would argue that we would get those

13   people out as well.

14        THE COURT:  You don't have to argue.

15        THE CLERK:  Suggest, I would strongly suggest that we

16   don't bring them back, and that perhaps we do a staggered

17   reporting time for tomorrow so the jurors who are essentially

18   clean and vetted thus far have a slightly later arrival time

19   tomorrow than those who have not so that they don't have to sit

20   through that video and questionnaire process tomorrow morning.

21        THE COURT:  I'm sure they really want to watch the

22   video again, though.  So will they check in on times or before

23   they leave the building will you tell them what to do?

24        THE CLERK:  I think before they leave the building.

25   So probably the best course of action would be to go up and to

1  release the jurors who are in the disqualified group and those

2  that were challenged for cause and that would leave us with the

3  jurors we're bringing back tomorrow.  We could explain to them

4  we need more jurors and that, you know, we'll give them a later

5  report time tomorrow but that they will have to come back.

6          THE COURT:  All right.  So you'll move everybody who

7  is coming back tomorrow into the right seats which really means

8  just removing one person from a seat, correct?

9          THE CLERK:  There may be three.  I don't believe we

10  removed all of them.

11          THE COURT:  Oh, we haven't removed --

12          THE CLERK:  Yeah, I think we keep everybody in the

13  seat they're currently in, we just have those who are

14  challenged for cause that are in that 36 stand and exit.

15          THE COURT:  Okay.

16          THE CLERK:  So we can call them -- those people by

17  number.

18          MR. HALLETT:  So when you say challenged for cause,

19  you mean that they have been struck.

20          THE CLERK:  Exactly, stricken.

21          MR. HALLETT:  Stricken.

22          THE CLERK:  Yeah.

23          THE COURT:  So that's the three that we've just spoken

24  to, 51, 52, 64?

25          THE CLERK:  Yes.

```
1              THE CLERK:  Yes.

2              THE COURT:  And there --

3              THE CLERK:  And then the 18.

4              THE COURT:  Okay.

5              THE CLERK:  And then didn't you say that is it 162 is

6      someone who was from the disqualified pile?

7              THE COURT:  Correct, yeah.

8              THE CLERK:  So that person should also be stricken.

9              THE COURT:  He is -- okay.

10             MR. HALLETT:  Yes.

11             THE COURT:  All right.  So apologies that this is

12     what -- where we are, but I think it's just necessary to get a

13     fair jury.

14             MR. HALLETT:  So you're bringing in all of the --

15     whatever the number is, 37, with --

16             THE COURT:  We're -- we're bringing -- well, is

17     it less -- is it -- do we have 36?

18             MR. HALLETT:  Some are excused, right?

19             THE CLERK:  So we have the less than 36 that are

20     currently seated.

21             THE COURT:  Yes.

22             THE CLERK:  And then we'll have the somewhere around

23     40 --

24             THE COURT:  Right.

25             MR. HALLETT:  Right.
```

1          THE CLERK:  -- perhaps less than that we'll call in

2    that were not here today.

3          THE COURT:  All right.  All right.  So you will

4    identify those that can retrieve their belongings.

5          THE CLERK:  Yes.

6          THE COURT:  Okay.  And I will tell the remainder that

7    they will be reporting tomorrow in a staggered way because we

8    need to call in some more people in order to seat a fair and

9    impartial jury and they will check in with you before they

10   leave as to what time?

11         THE CLERK:  I -- I think based on the estimates of

12   time, getting people through, getting the video watched,

13   questionnaires, I think a 9:30 reporting time --

14         THE CLERK:  9:30.

15         THE CLERK:  -- is a sufficient time to give them.

16         THE COURT:  Great, okay.  All right.  So it's five

17   past one now or so.  We'll just wait to hear from you as to

18   when they're all ready and in there and go back up and release

19   them again.  All right.  All right.

20       Anything further from anybody?

21         MR. HALLETT:  What time are you going to want us

22   tomorrow?  Do the written questionnaires and then we'll have to

23   look at those.

24         THE COURT:  So tomorrow we don't need to go through

25   anything ahead of time.

1        MR. HALLETT:  Right.

2        THE CLERK:  Maybe like by nine -- by nine, are we --

3   so we can go over the completed questionnaires?

4        MR. HALLETT:  Yep, great.

5        THE COURT:  Yeah.

6        MR. HALLETT:  Thanks.

7     (A break was taken from 1:08 p.m. to 1:23 p.m.)

8                    (Open Court.)

9        THE COURT:  All right, welcome back this afternoon.

10   So I'm going to be making some announcements soon about some of

11   you getting to go home and some you not getting to go home, but

12   before we do that the clerk has just brought an issue to my

13   attention that I need to discuss with the lawyers and so we're

14   all going to put our headphones on, and I apologize for any

15   rudeness that may seem attached to that.

16                    (Sidebar conference.)

17   ████████████████████████████████████████████

18   ████████████████████████

19   ██████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ███████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   ██████████████████████████████████████





1

2

3

4                          (Open court.)

5          THE COURT:  So Juror No. 115 could you come forward,

6   please.

7                     (Sidebar Conference.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25







1 ██████████████████████████████████████████████

2 ██████████

3                    (Open court.)

4        THE COURT:  All right.  So the clerk is now going to

5 read some numbers of jurors who will be able to collect their

6 belongings but not just leave the courtroom just yet and then

7 I'll describe what's going to happen next.

8        THE CLERK:  Okay, so please listen for your number.  I

9 apologize, these are not in any particular order.  Number 51,

10 52, 64, 162, 115, 42, 27, 152, 164, 145, 74, 171, 44, 120, 127,

11 68, 148, 26, 132, 99, 61, and 161.

12        THE COURT:  Thank you.  All right.  Those of you who

13 did not have your number called, you are remaining in our pool

14 right now.  Unfortunately, we aren't able to conclude our

15 selection of jurors today because we need to call in some more

16 jurors.

17        You'll remember that when we started this morning I told

18 you that what we needed to do is seat a wholly impartial and

19 fair jury from a cross section of the community.  You came and

20 you filled out some written questionnaires and then you

21 listened attentive -- attentively to me when I asked you other

22 questions.  Many of you were called up here to answer

23 questions, and it's part of that process that allows the

24 lawyers to make challenges for cause.  Challenges for cause

25 doesn't mean anything (sic) has done anything wrong or that you

1   could not be an appropriate juror in a different case or the

2   right case, but some jurors have been challenged for cause.  As

3   you know, we've had to then exchange seats with other jurors.

4   And we've simply run out of enough jurors.

5      It's very important to both the Government and to the

6   defendant, Mr. Dennison, to have a completely fair and

7   impartial jury.  So what we're going to do is tomorrow we are

8   going to call in more jurors and from that pool of jurors we're

9   going to continue and conclude the selection of a jury.

10      Even though those of you who did not have your numbers

11   called are still in the pool it doesn't mean you are going to

12   be on the jury and it doesn't mean you're not going to be on

13   the jury.  We won't know that until all challenges for cause

14   are concluded after tomorrow and all peremptory challenges,

15   which are challenges for no reason whatsoever, all -- both

16   sides are entitled to such challenges.  We won't know until

17   tomorrow, when that process has concluded, who the jury is who

18   will be seated for this case.

19      So on behalf of the court I apologize profusely that you

20   will have to come back tomorrow to conclude this process, but

21   it's very, very important to both sides.

22      So the jurors who will be coming in tomorrow morning at

23   approximately 8:00 a.m. will do exactly what you did this

24   morning, they will receive orientation and they will watch a

25   video.  Unless any of you have a burning desire to watch the

1    video again, you do not have to come at 8:00 o'clock to do

2    that.  You are free to, you're able to, but you don't have to.

3    And so you may arrive tomorrow at 9:30.

4        I'm going to give you some final instructions before you

5    leave.  So, first of all, not only is there no evidence that

6    has been presented in this case yet but we haven't even

7    concluded the process of selecting the jury.  You haven't heard

8    any part of the story and you certainly haven't heard the whole

9    story, so it is not appropriate for you to be considering this

10   case, thinking about how you might reach a verdict if you

11   are -- if you become a juror.  It's not fair for you to do any

12   of those things.

13       So you are not to talk to each other about this case.

14   You're not to talk to anybody else about this case.  You are

15   not to do any research on your own whatsoever about this case.

16   So when I say don't talk to anyone, I really mean anyone.  You

17   can't go home and talk to your spouse about what this case has

18   been about, or your best friend, or your children, or your dog.

19   You really can't.

20       What happens often with jurors is some of your friends or

21   family know that you came here today and they're going to want

22   to ask you a lot of questions about having been here, and you

23   need to tell them that you can't talk to them.  You can tell

24   them that the judge said you can't talk to them.  And I'm very

25   serious about that.  It's very hard to do, but it's your --

1    it's your solemn oath not to do that.

2         You may not research.  You may not read news articles.

3    You may not Google anyone.  You may not go on the internet and

4    see if you can find out any information about this case or any

5    issues that you think may be involved in this case based on

6    what you have heard here today or what you have done here

7    today.

8         You can't e-mail.  Don't telephone, don't telegram, don't

9    Tweet, don't go on Instagram, Facebook, LinkedIn, SnapChat,

10   YouTube, TikTok, all of the other ones that we could talk

11   about.  Don't communicate with each other.

12        I know there has been a lot of sitting around today, going

13   outside, coming back in.  You may talk to each other and say

14   hello, but please do not talk about any of the issues that have

15   arisen in the case or about this case or what might happen in

16   this case or what you think might happen in this case.

17        So with that, I'm going to excuse you.  For those of you

18   who didn't have your numbers called, the -- if there is any

19   further information then the clerk's office has provided the

20   number already for you to call or you will receive word, but if

21   you have received no word then you are to arrive tomorrow

22   morning at 9:30, we'll conclude the process.  It's twenty

23   minutes of two.  I'm -- I'm confident that you won't be here

24   quite as long tomorrow; although, I can't promise that with

25   certainty.  We'll get you out of here as quickly as we can

1    tomorrow.

2         And I know it can be frustrating to spend the time waiting

3    and waiting and not know whether you're going to be on this

4    jury or finally excused.  It's very, very important to the

5    process, though, that we carry it through as carefully as we

6    possibly can so that a truly fair and impartial jury, which is

7    a cross section of the community, be seated.  So thank you very

8    much.  Court will be in recess.

9                        (Time noted:  1:41 p.m.)

10

11                   **C E R T I F I C A T I O N**

12         I, Tammy L. Martell, Registered Merit Reporter, Certified

13    Realtime Reporter, and Official Court Reporter for the United

14    States District Court, District of Maine, certify that the

15    foregoing is a correct transcript from the record of

16    proceedings in the above-entitled matter.

17         Dated:  June 27, 2023

18                   /s/ Tammy L. Martell

19                   Official Court Reporter

20

21

22

23

24

25