UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,      CRIMINAL ACTION

           Plaintiff      Docket No:  2:21-cr-00149-JDL


     -versus-           **VOLUME II OF II**


BRIAN DENNISON,

        Defendant
_____

Transcript of Proceedings


Pursuant to notice, the above-entitled matter came on for **Jury Selection** held before **THE HONORABLE KAREN FRINK WOLF,** United States Magistrate Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 3rd day of May, 2022 at 9:05 a.m. as follows:


Appearances:

For the Government:  Craig M. Wolff, Esquire


For the Defendant:  Thomas F. Hallett, Esquire
                   Jordan M. Ramharter, Esquire


Tammy L. Martell, RMR, CRR
Official Court Reporter

(Prepared from manual stenography and
computer-aided transcription)

```
 1                    (Chambers conference.)
 2          THE COURT:  Good morning.
 3          MR. HALLETT:  Good morning.
 4          MR. WOLFF:  Good morning, Judge.
 5          THE COURT:  All right.  We are here this morning in
 6   United States versus Dennison, case number 21-cr-149.  We're
 7   here for a conference of counsel prior to day two of jury
 8   selection.  So is everybody ready to do this all over again?
 9          MR. WOLFF:  Yes, Your Honor.
10          MR. HALLETT:  Yes, we are.
11          THE COURT:  Hopefully it's not too much like the
12   second time we have to try a case.
13          MR. HALLETT:  I -- oh.
14          THE COURT:  Although we have to do this again.
15          MR. HALLETT:  Please don't remind me of that, yeah.
16          THE COURT:  All right.  So I think we have some -- I
17   think we have good news.  There are only five of the 30 --
18          THE CLERK:  There were 28 jurors that showed up.
19          THE COURT:  Okay, 28 jurors showed up, so only five
20   answered yes to any one of the questions that would exclude
21   them, so we have 23 clean -- completely clean questionnaires.
22          MR. HALLETT:  Good.
23          THE CLERK:  With no yes answers.
24          THE COURT:  No yes answers.  So hopefully that should
25   do it.  We'll keep our fingers crossed.  We at least have a
```

1   better proportion than yesterday.

2           MR. HALLETT:  Okay.

3           THE COURT:  So one of the issues is how we deal with

4   the jurors from yesterday who are coming in at 9:30 in terms of

5   answering all of the questions again.  My suggestion is that

6   though I instruct those who were here yesterday who answered

7   affirmatively to any question need not answer again unless

8   their answer has changed or there is additional information

9   they want to share with us; does that make sense?

10          MR. HALLETT:  Perfect.

11          MR. WOLFF:  It does, Your Honor.

12          THE COURT:  Okay, so that's how we'll deal with that.

13  I'll apologize to them for having to listen to all the

14  introductory remarks again and explain to the jurors what's

15  happened.

16      What I would like to do before we get started, as you know

17  the -- the group from yesterday are coming in at 9:30, they'll

18  need to get through security, so maybe we can get started

19  around quarter to ten.  Does that sound about right, Brenda?

20          THE CLERK:  Mm-hmm.

21          THE COURT:  What I -- I don't have a lot more that we

22  need to talk about this morning, but what I would like to do is

23  I would like for you to review the supplemental juror

24  questionnaires that the jury submitted in -- mostly in the

25  middle of April to make sure that there are no jurors who have

1    answered questions who you would like to inquire about who did

2    not otherwise raise their hand during questions here.  So we

3    have the issue yesterday with Juror No. 115.

4            MR. HALLETT:  Right.

5            THE COURT:  And I felt slightly badly that we kind of

6    singled him out unrelated to any particular question and

7    brought him up.  I don't think it bothered him at all.  But if

8    there are any jurors who you think we need any additional

9    inquiry from based on their jury questionnaire -- their

10   supplemental juror questionnaire submitted to the court a

11   couple of weeks ago, then we should identify those.

12           MR. HALLETT:  Right, okay.  And we -- we were provided

13   with all of those --

14           THE CLERK:  Correct.

15           MR. HALLETT:  -- early on electronically.

16           THE CLERK:  All of the jurors here today --

17           MR. HALLETT:  Right.

18           THE CLERK:  -- were part of that initial 100 that were

19   uploaded into the case.

20           MR. HALLETT:  I didn't see anything when we first went

21   through it that was --

22           THE COURT:  So I went through them all over the

23   weekend --

24           MR. HALLETT:  Yeah.

25           THE COURT:  -- myself and I don't remember seeing

1    anything particularly controversial, but I do want to give you

2    the opportunity to do that --

3              MR. HALLETT:  Yep.

4              THE COURT:  -- since I probably had you come in about

5    20 minutes too soon so you have got something you can do

6    between now and then.

7              MR. HALLETT:  Okay.

8              THE CLERK:  And I do have one questionnaire that I

9    received fresh this morning.  I will make a photocopy and give

10   it to each of you.

11             MR. HALLETT:  Okay, thanks.

12             MR. WOLFF:  Very good.

13             THE COURT:  All right.  So when we complete things

14   here obviously we'll have -- when we complete the challenges

15   for cause I will, as always, have -- ask you if you want any

16   additional questions.  I'll expect you to put on the record

17   your objections.  The Government has any objections, of course.

18   We'll do that all of course over our headphones.

19        Was there any problem yesterday with hearing what was

20   being said?  I know a couple of times Maggie expressed some

21   concern.  I think maybe a couple of jurors were a little bit

22   loud.  Did they -- I hate to ask them to whisper into the

23   mic -- into the mic, but is just a regular tone of voice is

24   that too loud?

25             THE CLERK:  I think it unfortunately depends on the

1   person.

2          THE COURT:  Okay.  All right.

3          THE CLERK:  So there were -- there were a few where I

4   was removing my headset and just seeing if I could hear them

5   and they were pretty clearly able to be heard, some of the

6   louder ones.

7          THE COURT:  Okay.  All right.  All right.  I have

8   nothing further for this morning.

9      Anything more, Craig?

10         MR. WOLFF:  No, and I don't think -- even if a juror

11  was whispering I think we were able to hear the person so.

12         THE COURT:  Okay.

13         MR. WOLFF:  I don't think there was any issue.

14         THE COURT:  You were with your headsets on.

15         MR. WOLFF:  Yes.

16         THE COURT:  I am worried about the pool otherwise

17  being able to hear people.

18         MR. WOLFF:  Right.

19         THE COURT:  All right.  Tom or Jordan anything?

20         MR. HALLETT:  No, nothing, thank you.

21         THE COURT:  Thank you.  Oh, one -- I'm sorry, one more

22  thing.

23         MR. WOLFF:  Thank you, Judge.

24         THE COURT:  So I know that there was an issue

25  yesterday about where your client was seated.

```
 1            MR. HALLETT:  Yeah, we're putting him at the end.

 2            THE COURT:  Okay, thanks for doing that.

 3            MR. HALLETT:  Yep.

 4            THE COURT:  It -- it's all fine.

 5            MR. HALLETT:  Got it.

 6            THE COURT:  Okay.

 7       (A break was taken from 9:11 a.m. to 9:58 a.m.)

 8               (Open Court.  Defendant Present.)

 9            THE COURT:  Please be seated.  Good morning, everyone.

10   I'm Karen Wolf.  I am the judge who is going to be presiding

11   over jury selection today in a criminal case called United

12   States versus Brian Dennison.  There are a number of you who

13   are here today who were here yesterday for part of our jury

14   selection, and I'm going to apologize to you in advance because

15   you are going to be hearing the same discussion that we had

16   yesterday and you will be hearing the same questions that were

17   asked yesterday.

18       Those of you who are new here today, thank you for coming

19   in, especially on relatively short notice.  The purpose of what

20   we are doing today is to try to seat a fully fair and impartial

21   jury in the matter that's going to be heard in a couple of

22   weeks.

23       So, again I apologize to those who were here yesterday

24   because you are going to be hearing things again until we get

25   into the questions that you already heard.
```

1          So, I believe that those of you who are new have already

2     been introduced to our jury coordinator Brenda Boucher who is

3     really in charge here, and if you have any questions about

4     where you need to be, you need to ask Brenda.   Tammy Martell

5     our court reporter.   She is right down here in front of me, and

6     she is taking down everything that's happening and everything

7     everybody is saying here in the courtroom or anything that

8     people say when they come up to the bench and talk to me

9     privately.

10          Madame clerk, will you please administer the oath.

11          THE CLERK:   All jurors including those from yesterday

12     please stand and raise your right hand.   Do each of you

13     solemnly swear that you will truly answer all questions put to

14     you by the Court regarding your ability to serve on the jury to

15     be drawn today and that you do this under the pains and

16     penalties of perjury?

17          PROSPECTIVE JURORS:   Yes.

18          THE CLERK:   Thank you, you may be seated.

19          THE COURT:   All right.   Before I start, it's very

20     important that all of you be able to hear me, and so if at any

21     point during the discussions today you cannot hear what I am

22     saying, please either raise your hand, stand up, yell out.

23     With these big microphones and all of the acoustics in here,

24     that's probably unlikely, but I want to make sure you can hear

25     me.

1          So as Chief Justice Roberts of the United States Supreme

2     Court explained in the video that those of you new here today

3     just watched about jury empanelment, jury trials are a critical

4     function of the court.  Criminal defendants and some litigants

5     in civil cases have a constitutional right to trial by jury.

6     Today we will be choosing from among the entire group of you 16

7     people who will serve as a jury in our criminal case.

8          I know that the video that you just watched explained the

9     process, and I won't repeat it, but I will be asking you

10    questions that you have a duty to answer truthfully and

11    completely.  The process is called voir dire which comes from

12    the French language and it means to speak the truth.  The

13    purpose of voir dire is to seat a wholly fair and impartial

14    jury from a cross section of the community.

15         After my questions and your answers the attorneys will be

16    deciding who should be challenged for cause, and what that

17    means is that there is a specific reason why a particular juror

18    might not be able to be fair and impartial.

19         Also, after my questions and some answers, the -- the

20    attorneys will decide how they wish to exercise what are called

21    peremptory challenges.  Peremptory challenges are challenges to

22    a particular juror that the attorneys need not provide any

23    reason for.

24         Just as it is vitally important that we honor the

25    litigant's constitutional rights to trial by jury, it is also

1    critical that we protect all of you who have responded to the

2    call to fulfill your duty as citizens of the United States and

3    to be here today, and I thank you for -- for being here.

4        The Court recognizes that it is an imposition in a sense,

5    that you have taken time from your family and your jobs and

6    your homes and all of the other things you have to do to be

7    here, and we appreciate it, and the system could not work

8    without you being here.

9        To keep you safe and protect your rights, we have made a

10   number of changes to the process for jury selection to -- to

11   reduce the risks associated with COVID 19.  We are following

12   guidance provided by the CDC and our own epidemiological expert

13   here with the court.  We have upgraded our air handling systems

14   and we are monitoring the air quality that you are breathing.

15       We will be using headsets when we need to have private

16   conversations with just one potential juror with just the

17   attorneys, myself, and that potential juror, instead of

18   gathering at sidebar.

19       So prior to COVID 19 when we selected juries we would

20   bring jurors who needed to answer in more detail particular

21   questions up to sidebar.  That means they would come right up

22   here and everybody would huddle together.  And now we know that

23   was not necessarily the safest way even if we were talking

24   about colds never mind COVID 19.

25       So now we will do those discussions using headsets that

1   only the direct participants -- the juror, the lawyers, and I,

2   and the clerk -- can hear.

3       We will also be following the protocol that everyone must

4   wear a mask.  Masks should be over your nose and your mouth.

5   We recognize that being here maybe for a number of hours makes

6   that difficult, and I thank you for -- for being willing to do

7   so.

8       We'll also be following these protocols at trial.  Masks

9   must be worn by everyone at all times during trial except

10  witnesses may remove their masks to testify after they are

11  seated in the witness chair.  Counsel may remove their masks

12  when questioning witnesses or doing -- during opening

13  statements or closing arguments provided that appropriate

14  distance from other people is maintained.  And the judge will

15  be unmasked when instructing the jury.

16      Anyone who is unvaccinated will be required to always keep

17  their mask on.

18      All right.  We have moved a group of 36 of you to the

19  front of the courtroom.  If you are seated in the front, you

20  have already been randomly selected as the first group of

21  prospective jurors who we will be questioning during challenges

22  for cause.  I will be asking you a number of questions to

23  determine if you have any knowledge or biases about this case.

24      Your answers, which will -- you will give upon the oath

25  that you just took, will enable me to determine whether any

1    prospective juror must be excused for cause.

2         To give you some idea of a challenge for cause, if one of

3    you is related to a party in the case or if you have been

4    represented by one of the lawyers, you could be excused for

5    cause.

6         I emphasize that even if you are not challenged, if for

7    any reason at all you feel you cannot be fair and impartial in

8    the consideration of this case, it is your duty to inform me of

9    that fact.

10        As I ask the questions, please treat each one as being

11   directed to you personally.  I will try to phrase the questions

12   in a way -- way that allows a yes or a no answer.

13        Unless I indicate otherwise, if the answer to the question

14   I ask is no, you should simply remain seated and do nothing and

15   our court reporter will record your answer as being no.  In

16   other words, your silence in response to a question will be

17   taken as no.

18        If your answer to one of my questions is yes, you should

19   stand and give your juror number.  Not your name, but your

20   juror number.  Please do not volunteer any information unless I

21   specifically ask you for a more detailed explanation of your

22   answer.  We do not want anybody saying something out loud that

23   may prejudice or bias other members of the jury panel in any --

24   in any way.

25        In this case I anticipate that most if not all of the

1    follow-up questions will be asked at sidebar.  In other words,

2    you may be asked to come up, to sit in the witness chair, and

3    you'll be given a headset, and that's how I will communicate

4    with you if I have more detailed inquiry to make.

5        So we will be keeping track of the answers yes to any

6    question and after we get through a set of questions we will

7    ask individual jurors with yes answers to come forward one at a

8    time to the witness stand.  As I said before, only I and the

9    lawyers and court personnel and our court reporter will be able

10   to hear your responses.

11       I recognize that sometimes the questions that you may be

12   asked may ask for some personal information or personal views

13   or personal experiences.  Nobody will be able to hear your

14   answers except for me, the lawyers, court personnel, and the

15   court reporter.

16       Understand that nothing that I ask is intended to

17   embarrass you or interfere with your privacy.  If I ask you

18   something in open court and you would like to answer the

19   question privately, simply inform me of that and I will invite

20   you to come forward.

21       Now, for those of you not seated in the front of the

22   courtroom, we need you to follow along closely with the

23   questioning.  It may be necessary from time to time to

24   substitute one or more of you for someone who has been excused

25   for cause.

1          Each of you has been provided with a paper and a pen to

2     allow you to make whatever notes you need to in order to ensure

3     that you will be able to tell me not only if you would have

4     answered one of my questions in the affirmative but which ones

5     and why.  This is for people who are not in the front.

6          There are 19 questions for this case.  So I'm going to ask

7     you to take a sheet of paper -- and this is for those of you

8     who are new to the panel today.  I'm going to ask you to take

9     your sheet of paper and write numbers 1 through 19 down on the

10    side now.  This will speed things up if you are -- if you do

11    get called to replace a dismissed juror.

12          (Discussion off the record with the clerk.)

13          THE COURT:  All right, so the clerk has just

14    identified for me those of you who are in the front, so

15    probably some you are wondering are we in the front or not in

16    the front?  So the good news is that for right now those who

17    are in the front, in other words if you have an affirmative

18    answer to the question you need to stand, there are only five

19    of you, and they are Jurors No. 176, 177, 209, 222, and 84.

20    All right?

21          So let me give you some further instruction.  For those of

22    you who were here yesterday, if you stood in response to a

23    question I asked, in other words you had a yes response to a

24    question I had and you were here yesterday, you need not stand

25    again unless your answer has changed or unless there is further

1   information -- information you wish to provide to me.  Does

2   everyone understand that?

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  All right, very good.  All right.  We're

5   now going to talk about this case in particular.  The case name

6   is United States versus Brian Dennison.  In this criminal case,

7   the United States Government has charged the Defendant Brian

8   Dennison with one count of transmitting a threatening

9   interstate communication.

10       He is charged in a single-count indictment that alleges

11   that on or about September 8, 2021, the defendant knowingly and

12   willfully transmitted in interstate commerce a threat to injure

13   the person of another.  Specifically that he used the internet

14   to post on Twitter the statement, quote, I'm going to kill Jews

15   with my AR-15 tomorrow, end quote, in violation of Title 18

16   United States Code Section 875(c).

17       The indictment is simply a description of the charge

18   against Mr. Dennison, it is not -- it is not evidence of

19   anything.  Mr. Dennison pleaded not guilty to the charge and

20   denies committing the crime.

21       I will now ask the Government to introduce themselves and

22   identify anyone who will be associated with them in this case.

23            MR. WOLFF:  Thank you, Your Honor.  May I remove my

24   mask?

25            THE COURT:  You may.

1          MR. WOLFF:  Good morning, ladies and gentlemen, my

2    name is Craig Wolff.  I am an Assistant United States Attorney

3    and I'm with the U.S. Attorney's office here in Portland.  The

4    U.S. Attorney is Darcie McElwee.  Seated next to me at counsel

5    table is Jonathan Duquette.  He is a task force officer with

6    the Federal Bureau of Investigation.  He is also a border

7    patrol agent with the U.S. Border Patrol.  During trial my

8    co-counsel will be Johnathan Nathans who is also an Assistant

9    United States Attorney.  He was unable to be here today.  And

10   you may also see from time to time in the courtroom two other

11   employees of the U.S. Attorney's office, Katherine Whalen and

12   Peggy Milashouskas.  Thank you.

13         THE COURT:  Thank you, Mr. Wolff.  I will now ask

14   counsel for the defendant to introduce themselves, their

15   client, their law firm, and anyone who will be associated with

16   them in the case.

17         MR. HALLETT:  Thank you, Your Honor.  Good morning,

18   folks.  I'm Tom Hallett and I practice with the law firm of

19   Hallett, Whipple & Weyrens.  Today I represent Brian Dennison.

20        Brian, could you stand up, please, take off your mask.

21        And Jordan Ramharter is working with me, she is defending

22   him as well, and we have Deb Strout who is assisting.  There

23   are two other people from my firm that may appear periodically

24   throughout this trial, and that is Kiersten Van Syckle and

25   Grainne Dunne.

1          THE COURT:  Thank you, Mr. Hallett.  All right.  I'm

2     now going to begin the questioning.  As I mentioned, there are

3     19 questions.  Please follow along carefully.  Again, the five

4     of you who are new to the panel are -- and who are in the

5     so-called front are 209, 222, 177, 176, and 181.  If you have

6     an answer to my question that is yes you need to stand if those

7     are your juror numbers, 209, 222, 177, 176, and 181.  Again,

8     those of you who were here yesterday you need only stand in

9     response to a question if your answer has changed from

10     yesterday or if you have additional information that you would

11     like to provide to me.

12          For those of you in the back, or those of you other than

13     the five who I've just mentioned, or those who were here

14     yesterday, if you have a yes answer to the question, please

15     note that next to the line on your paper where you put that

16     question number.  I will tell you the question number as we go

17     through.  As I indicated, you may end up being substituted for

18     another one of the jurors and we may have to come back to that

19     question for you.

20          Question No. 1.  Do you know from any source anything

21     about this case?  All right, thank you.

22          Question No. 2.  Do you or a member of your immediate

23     family or close friend know or have any of you had contact with

24     the Defendant Brian Dennison or any member of his family?

25          Question No. 3.  Do you or to your knowledge does a member

1   of your immediate family or close friends know any of the

2   lawyers in this case or the associates or assistants that they

3   have introduced?  All right, very good.

4        I just want to remind the jury pool that while we are

5   going through this exercise you will see that the lawyers and

6   their assistants may oftentimes turn around and look at you.

7   This is one of the few times in life where it's okay to stare.

8        So the -- the attorneys are not doing that to be rude to

9   you or to make you uncomfortable, this is their opportunity to

10  see you and determine whether any of you are answering

11  questions in the affirmative and to make notes about that so

12  that we can follow-up with questioning if necessary at sidebar.

13  So please don't hold that against any of them or their clients.

14       All right.  During the trial -- this is Question No. 4.

15  During the trial -- during the trial we expect that witnesses

16  will be called to testify.  Do you know or have you had any

17  contact with the following:  Jessica Ricker of Buxton, Maine;

18  Florice or Risa Dennison of Buxton, Maine; John Dennison of

19  Buxton, Maine; Nathan Gagne of Hollis, Maine; Jacob Barney of

20  East Waterboro, Maine; Roxanne Farmer of Monmouth, Maine;

21  Skipper Geanangel of Standish, Maine; Cheryl Roy Stateville of

22  Standish, Maine; Heather Mains of Buxton, Maine; Karen Carlson

23  of Gray, Maine; Emma James of Westbrook, Maine; Harris Weeks of

24  Tucson, Arizona; Frederick Witt of the Federal Bureau of

25  Investigation or the FBI; Jordan Holt of the FBI; Jonathan

Duquette of the FBI and the U.S. Border Patrol; Maurice Drouin

of the FBI and the Androscoggin County Sheriff's Office; Joshua

Borges of the FBI and the U.S. Customs and Border Protection;

Kristina Troxel of the FBI; Christopher White of the FBI;

Nathan Wilkins of the FBI; Garrett Drew of the FBI; Thomas

Ventresca of Howell's Indoor Range and Gun Shop in Gray, Maine.

PROSPECTIVE JUROR:  What was that name?

THE COURT:  Thomas Ventresca.  In addition, there may

be representatives from Twitter, TextMe, and Charter

Communications who may testify.  Does anyone have any

affiliation or association or know anyone from Twitter, TextMe,

or Charter Communications?

All right.  So no affirmative responses to questions one

through four.

We're now going to move on to Question No. 5.  There may

be testimony from law enforcement officers in this case.  Is

there anything about law enforcement witnesses that would lead

you to credit their testimony any more or any less than the

testimony of a lay or non law enforcement witness just based on

the fact that they are law enforcement officers?

Does anyone need the question repeated or not understand

it?  All right.  No affirmative response to Question No. 5.

Question No. 6.  Have you or any of your close friends or

immediate family ever had a positive or negative experience

with the criminal justice system that would affect your ability

1    to be fair and impartial?  No affirmative responses to No. 6.

2        Question No. 7.  Have you or any of your close friends or

3    immediate family ever been the victim of a crime?

4        Your juror number, sir?

5            JUROR 16:  16.

6            THE COURT:  Thank you.  Question No. 8 -- oh, I'm

7    sorry.  Yes, your juror number, ma'am?

8            JUROR 218:  218.

9            THE COURT:  Thank you.  Yes, ma'am, in the back.

10           JUROR 196:  196.

11           THE COURT:  One nine six?  Yes, ma'am.

12           JUROR 71:  71.

13           THE COURT:  Thank you.  All right.  Question No. 8.

14   Are you a vendor or contractor for the United States Government

15   or do you work for one?  All right, no affirmative response.

16           (Discussion off the record with the clerk.)

17           THE COURT:  All right, this is Question No. 9.  In a

18   trial the judge instructs the jury on the law and as a juror

19   you will be required to follow the law whether you agree with

20   it or not.  You will be instructed that the fact that the

21   defendant has been arrested and charged, that is accused of a

22   crime, is no evidence whatsoever of his guilt and is not to be

23   considered by you in any way in determining whether he is

24   guilty or not guilty.  Is there anyone who could not or would

25   not follow that instruction?  No affirmative response to

1    Question No. 9.

2         Question No. 10.  You will be instructed that every

3    defendant has a constitutional presumption of innocence and the

4    Government bears the burden of proving that the defendant is

5    guilty beyond a reasonable doubt.  Is there anyone who could

6    not or would not follow that instruction?  No affirmative

7    response.

8         Question No. 11.  You will be instructed that every

9    defendant in a criminal case has the constitutional right not

10   to testify and no inference or suggestion of guilt whatsoever

11   may be drawn from that fact that the defendant elected not to

12   testify.  Is there anyone who could not or would not follow

13   that instruction?

14        I'm going to repeat that.  You will be instructed that

15   every defendant in a criminal case has the constitutional right

16   not to testify and that no inference or suggestion of guilt

17   whatsoever may be drawn from the fact that the defendant elects

18   not to testify.  Is there anyone who could not or would not

19   follow that instruction?  No affirmative response to 11.

20        Number 12.  You will be instructed that you must base your

21   verdict solely and exclusively on the evidence and on the law

22   as presented in the courtroom and that your verdict must not be

23   influenced by sympathy, passion, or prejudice or by anything

24   you may have read, seen, or heard outside the courtroom.  Is

25   there anyone who could not or would not follow this

1  instruction?  No affirmative response.

2      Question No. 13.  You will be instructed that you cannot

3  do any research about the participants and issues in this case

4  which means for instance that you may not read articles, read

5  or watch news reports, listen to news reports, do Google or

6  other internet searches, or peruse social media for information

7  about the case.  Is there anyone who could not or would not

8  follow that instruction?  No affirmative response.

9      Question No. 14.  Recognizing that a criminal jury must

10  reach its verdict unanimously, would you tend to feel an

11  obligation to reach a verdict solely because it was consistent

12  with the vote of the majority of your fellow jurors?  No

13  affirmative response.

14      Question No. 15.  Do you have any political, religious,

15  moral, or philosophical beliefs or opinions about our system of

16  criminal justice that would affect your ability to render a

17  verdict fair and impartial to both the Government and the

18  defendant in this case?  No affirmative response.

19      Question No. 16.  Do you have a medical or physical

20  condition such as difficulty seeing or hearing or sitting for

21  long periods of time that would make it difficult or

22  uncomfortable for you to listen to the testimony, observe the

23  witnesses, or otherwise sit as a juror in this case?  No

24  affirmative responses.

25      All right, this is your chance to look around and stare at

1    other people.  It's Question No. 17.  Are you related to or do

2    you work with any member of the jury?  All right, no

3    affirmative responses.

4        Question 18.  The trial of this case will begin on Monday,

5    May 23, 2022, and it is estimated to require approximately

6    three days.  Chief Judge Jon Levy will be the presiding judge.

7    His typical trial day runs from 8:30 a.m. until 2:45 p.m. with

8    a 15-minute break in the morning and a 30-minute lunch break.

9    You may bring food with you to eat during the breaks.  On the

10   day the case is entrusted to the jury for deliberations on a

11   verdict, the jury most likely will be required to stay beyond

12   2:45 p.m.  Given the anticipated trial schedule, is there any

13   reason why you would not be able to serve as a juror in this

14   case?  No affirmative responses.

15       Question No. 19.  This is our final question.  Given what

16   you have learned about the issues in this case, is there

17   anything that gives you concern about serving on the jury or

18   any reason whatsoever that you could not be completely fair and

19   impartial toward both the Government and the Defendant Mr.

20   Dennison?  All right, no affirmative responses.

21       So what I'm going to do now is I'm going to speak with the

22   lawyers privately over the headsets.  So if anybody would like

23   to stand and stretch or anything like that, you're free to do

24   so.

25                    (Sidebar Conference.)



```
1   ███████████████████████████████████████████████████

2         █████████████████████████

3                      (Open court.)

4         THE COURT:  All right, folks, while we're waiting for

5   some folks to come back into the room, a couple of things that

6   I just wanted to mention.  I did not notice until we were

7   halfway through the questioning that our other jury

8   administrator Maggie Melanson is here in the courtroom today

9   and so Maggie --

10        THE CLERK:  Thanks, Judge.

11        THE COURT:  -- and Brenda any questions about anything

12  you ask them.  They're the bosses.

13     So I would like to invite Juror No. 16 to come up to the

14  witness stand, please.

15                 (Sidebar conference.)

16        ████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████

20        ██████████████████████

21        █████████████

22        ██████████████

23        ████████████████

24        ██████████████████████

25        ███████████
```







1

2            (Open court.)

3    THE COURT:  Would Juror No. 71 come forward, please.

4            (Sidebar conference.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25







16                        (Open Court.)

17        THE COURT:   Would Juror No. 30 please come forward.

18                    (Sidebar conference.)







```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                    (Open court.)

25          THE COURT:  Would Juror No. 76 please come forward.
```







13                     (Open court.)

14          THE COURT:  All right, so we have now concluded the

15     challenge for cause portion of jury selection today.  I do need

16     to speak with the lawyers now again, though, so we'll have to

17     put our headsets back on.

18                     (Sidebar Conference.)





```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25            (Discussion off the record with the clerk.)
```

```
 1                        (Open court.)
 2            THE COURT:  All right, so we're going to move on now
 3    to peremptory challenges.  In this part of the case you will
 4    not be asked any questions and it should move through
 5    relatively quickly; however, our jury administrator Brenda
 6    Boucher, who takes good care of all of you, has asked me to ask
 7    any of you if you would like to take a stretch break.  Not a
 8    break to leave the room but a stretch break before we go
 9    through that process.  All right.
10            Understand again that during this part of the process it
11    is possible that the lawyers will swing their chairs around to
12    look at you.  Again they're not being rude, they really aren't,
13    they're doing their jobs.
14            So I'm going to give the lawyers some time to go through
15    all the information that they've taken down and the information
16    that you have provided to make some decisions about their
17    peremptory challenges.  Government has six peremptory
18    challenges, defendant has ten peremptory challenges.
19            Counsel, you can just let me know when you're ready to
20    proceed.
21            MR. WOLFF:  Yes, Your Honor.
22            THE COURT:  While the attorneys are thinking you
23    should feel free stand if you -- if you would like.
24                        (Pause.)
25            THE COURT:  Counsel, I'm not going to slow you down,
```

```
 1   but I -- if you are going to be a little bit longer I want to
 2   inquire of the venire whether they would like to take a break.
 3            MR. HALLETT:  We can go for a little bit longer, Your
 4   Honor.
 5            THE COURT:  All right.  So at this point if anybody
 6   would like to leave the courtroom to use the restroom or move
 7   around a little more than you can move in you may do so.
 8       (A break was taken from 11:26 a.m. to 11:30 a.m.)
 9                  (Sidebar Conference.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```





6                       (Open court.)

7        THE COURT:  Okay.  Would juror number -- would Juror

8   No. 86 please come forward.

9                   (Sidebar conference.)













```
 1
 2
 3
 4
 5
 6                     (Open court.)
 7         THE COURT:  So the clerk is now going to read the
 8  juror numbers of those of you who will serve on our jury in
 9  this case.
10         THE CLERK:  Okay, would the following jurors please
11  stand so that we can identify you all.  Juror No. 88, Juror
12  No. 140, Juror No. 110, Juror No. 6, Juror No. 1, Juror
13  No. 130, Juror No. 105, Juror No. 33, Juror No. 222, Juror 84,
14  Juror 86, Juror 71, Juror 30, Juror 124, Juror 76, and Juror
15  45.
16         THE COURT:  All right, thank you very much.  You may
17  be seated.  The lawyers and I are going to go back on our
18  headsets for one last time and then I'm going to have some
19  final instructions for all of you.
20                 (Sidebar Conference.)
21
22
23
24
25
```



7           (Open court.)

8           THE COURT:  All right, so we have a small error with

9     one of you.  One of you may not be on the jury now, you may be

10    happy about that.  So the clerk is now going to read the

11    numbers again all the way through and I will ask you to please

12    stand when your number is called.

13          THE CLERK:  Okay, take two.  88, 140, 110, 6, 1, 130,

14    105, 33, 222, 84, 86, 71, 108, 124, 76, and 45.

15          THE COURT:  All right.  So originally Juror No. 30 was

16    called.  If you are not standing, you are not selected for this

17    jury just to be clear so everyone knows who is on our jury.  So

18    one last time now I'm going to go on our headsets to talk to

19    the lawyers, it will just take a second, and you can be seated.

20          (Sidebar Conference.)

1 █████████████████████████████████

2                    (Open court.)

3          (Discussion off the record with clerk.)

4         THE COURT:  All right, those of you who have been

5 selected for the jury in United States versus Dennison I ask

6 you that you stay behind when we finish here and our jury

7 administrators will give you instructions on reporting, when to

8 report and when to call a recorded number for last minute

9 information on this case.

10         You the jury must decide this case based solely on the

11 evidence presented here in the four walls of this courtroom.

12 This means that before and during the trial you must not

13 conduct any research about the case or the parties involved or

14 the issues in the case.  Do not consult any reference materials

15 or search the internet, websites, or blogs.  Don't do anything

16 to obtain information from any source outside the confines of

17 this courtroom.

18         Should you notice anything in the newspaper or hear

19 anything on the radio or TV about this case, you must turn the

20 page or change the station or the channel.  Whatever it is that

21 you must do to avoid reading or hearing whatsoever about this

22 case or what may be reported about this case.

23         Everything you learn about this case you will learn in

24 the courtroom during the trial and from no other source.  When

25 the time comes, the attorneys will present the case to you.  It

1    is not fair for the parties for you to consider any other

2    information other than what they present to you.

3           What we did here today is not evidence in the case.

4    It is not part of the case.  It's what you hear once the trial

5    starts during the course of the trial.

6           I want to make a couple other important points.  Until

7    all of the evidence is in, you will not have heard the whole

8    story.  As I indicated, this is not part of the story, only the

9    evidence in the case is.  It would not be fair to start

10   deliberating until you have heard all of the evidence.

11          Accordingly, you are not to talk to each other about

12   the case until after you have heard all of the evidence and

13   heard Judge Levy's instructions on the law and heard all of the

14   closing arguments of counsel.  Once that has all happened,

15   Judge Levy will very clearly tell you that you may begin your

16   deliberations.  Only then can you talk to your fellow jurors

17   about the case.  Now, that doesn't mean you can't talk to your

18   fellow jurors, you -- during the trial, but you cannot talk

19   about the case at all.

20          Second, you cannot discuss the case with anyone until

21   you have returned a verdict and the case is at an end, and when

22   I say anyone I mean anyone.  That includes your spouse or

23   significant other, your children, your best friend, your dog,

24   your cat.  You cannot talk to anyone about the case.

25          Now, you -- many of you have probably told your family

1    that you are here for selection today.  Those of you who were

2    here for selection yesterday may have told your family or your

3    friends or they know that you are here.  It is not uncommon for

4    your family and friends to want to get information about --

5    from you about what the case is about, what the case is that

6    you're going to hear now or during the trial.  You may not

7    communicate with them.  You need to tell them that you cannot

8    talk about the case in any fashion whatsoever.  You may feel

9    pressured to do so.  You may be told that it is fine for you to

10   do that, no one will ever know.  You may not do that until the

11   case is fully concluded and there is a verdict and you are

12   discharged.

13          Please don't communicate in any other way.  Don't

14   text, don't e-mail, don't telephone, don't telegram, don't

15   Tweet, don't share anything on social media, don't post, don't

16   blog on any site, Facebook, LinkedIn, Instagram, SnapChat,

17   YouTube, TikTok, whatever is out there for these sites.  Don't

18   communicate with the case -- about this case with anyone and do

19   not allow anyone to discuss it with you.  Because -- all right.

20          So those of you who have been selected, you are now

21   excused until May 23, 2022.  Please arrive at the courthouse at

22   eight a.m. so that the trial may begin promptly at 8:30 a.m.

23          For those of you who are not familiar with Portland,

24   you may have realized just in being here yesterday or today

25   that parking can be a little bit tricky in downtown, so plan

1      accordingly to give yourselves ample time to get parked.

2              If between today and May 23 any of you or anyone has

3      been in close contact with someone who tests positive for

4      COVID, or shows symptoms associated with COVID -- so if any of

5      you test positive for COVID, or you are in close contact with

6      anyone who tests positive for COVID, or shows symptoms

7      associated with COVID -- please call the court immediately.  We

8      want to make sure that everybody stays safe.

9              Thank you for your attention and your service today.

10     I know we have taken a lot of your time.  Jury selection takes

11     a lot -- long time and that's because it takes a long time to

12     make sure that we have a truly fair and impartial jury from a

13     cross section of the community.

14             You can be assured that whether or not you were picked

15     to serve on the jury, the parties and the Court appreciate your

16     willingness to go through this process and fulfill your

17     responsibilities as citizens of the United States.

18             If you were not selected, it's not for you to take

19     that personally.  If you were -- if you were excused for either

20     cause or on a peremptory challenge, that is because the lawyers

21     are working very, very hard to make sure that there is truly a

22     fair and impartial jury that is a cross section of the

23     community.

24             To the rest of the panel who are not selected today,

25     you will not have to report again until June 6, 2022.  We want

1    to thank you for your patience.  I saw a lot of you brought

2    books, good idea.  There is down time during selection and

3    during trials.  So thank you for your patience and your

4    willingness to fulfill your civic duties.

5           Even though you have not been selected for this jury,

6    you may be selected for another jury, and you are an important

7    part of the process no matter what.  You have allowed us to

8    constitute a fair and impartial jury for each of these cases.

9    You're excused as well with thanks of the Court and the

10   parties.

11          Anything further from the Government?

12          MR. WOLFF:  No, Your Honor.

13          THE COURT:  From the defendant?

14          MR. HALLETT:  Nothing, Your Honor, thank you.

15          THE COURT:  All right, very good.  Court is in recess.

16          THE CLERK:  All rise.

17                 (Time noted:  12:06 p.m.)

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T I O N**

2          I, Tammy L. Martell, Registered Merit Reporter, Certified

3    Realtime Reporter, and Official Court Reporter for the United

4    States District Court, District of Maine, certify that the

5    foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7          Dated:  June 27, 2023

8                    /s/ Tammy L. Martell

9                    Official Court Reporter