## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS.                        ) | DOCKET 2:21-cr-00149-JDL |
| ) | |
| BRIAN DENNISON             ) | |
| ) | |

### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF FIREARMS

NOW COMES Defendant Brian Dennison, by and through counsel, and moves to exclude the Government from introducing any evidence that Brian Dennison purchased, possessed, or owned any firearms or ammunition, including an AR-15 style rifle. Brian respectfully requests this Court schedule a hearing for oral argument on this issue. In further support thereof, Brian states as follows:

### FACTS

On September 8, 2021, the FBI received an alert from a software program they use to monitor social media platforms that a Twitter account with the username @Ma1lus tweeted "Building a pipe bomb." Gov't Bates No. 000001. An FBI analyst then reviewed @Ma1lus's Twitter page and observed a subsequent tweet stating, "I'm going to kill jews tomorrow with my ar15 tomorrow." Gov't Bates No. 000002. The analyst notified the FBI's National Threat Operations Center. *See* Gov't Bates No. 000190.

At their request, Twitter provided the FBI with login and subscriber information for @Ma1lus, including the account holder's telephone number and list of IP addresses used to log into the account. Gov't Bates No. 000191. The FBI traced the telephone number to a TextMe account. *Id*. From TextMe, the FBI learned the telephone number was assigned to username

1

briandennison93707. *Id*. Separately, information obtained from Charter Communications reflected the IP addresses associated with the Twitter account were located in Buxton Maine and belonged to an individual named Florice Dennison. Gov't Bates No. 000192.

The same day, officers went to the address. *Id*. Florice Dennison answered the door and spoke with the agents. *Id*. When asked who lived at the residence, Ms. Dennison explained that her son Brian lived in an apartment above the garage. *Id*. She asked if the agents would like to speak to Brian, and when they answered yes, she went and got Brian, who came to the door. *Id*. Brian declined to speak with the agents at that time. *Id*.

The following day, September 9, 2021, agents returned to the property with a search warrant. During their search, agents recovered both handguns and ammunition. Gov't Bates No. 00066. In October 2021, pursuant to a proffer agreement, Brian voluntarily provided the Government with the location of a Smith and Wesson M&P rifle in a gun case along with ammunition.

## ARGUMENT

To convict Brian of violating 18 U.S.C. § 875(c), the Government must prove that he (1) knowingly and willfully transmitted a communication into interstate commerce; (2) that the communication in question contained a true threat to injure another person or persons; and (3) that Brian, in sending the communication, had the purpose of issuing a true threat or the knowledge that the communication would be viewed as a true threat. 18 U.S.C. § 875(c). A "true threat" is defined as a statement made with the specific intent to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *Virginia v. Black*, 538 U.S. 343, 359–60 (2003) ("[A] prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to

protecting people from the possibility that the threatened violence will occur.") (Internal citations omitted). It is a serious threat—not idle talk, a careless remark, or something said jokingly— that is made under circumstances that would place a reasonable person in fear of being injured. *Id.*

In other words, to secure a conviction the Government has the burden to prove both that Brian transmitted a communication that a reasonable person would view as a threat to place them in imminent fear of bodily harm or death *and* that Brian transmitted the communication for the purpose of placing an individual or individuals in fear of bodily harm or death or transmitted the communication with the knowledge that the intended recipients of the communication would view it that way. *United States v. Elonis*, 841 F.3d 589, 596-97 (3rd Cir. 2016) ("Section 875(c) contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute.").

As a preliminary matter, the defense anticipates it will stipulate to Brian's authorship and transmission of the Tweet. Thus, the gun is not admissible to prove his identity pursuant to Rule 404(b)(2).

### I. Evidence of Brian's Actual Ownership of Guns and Ammunition is Irrelevant. It is Thus Inadmissible under Rule 402.

Pursuant to Federal Rules of Evidence 402 relevant evidence is admissible unless provided otherwise by the law or these rules. Fed. R. Evid. 402. Rule 402 further provides that all irrelevant evidence is inadmissible. *Id*. Rule 401 lays out the test for relevancy: evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401.

As explained above, an intent or ability to carry out the threat is not an element of 18 U.S.C. § 875(c). *See also* Pattern Criminal Jury Instructions for the District Courts of the First Circuit 2022 Revisions § 4.18.875 ("It is [ ] not necessary to prove that [defendant] actually intended to

carry out the threat"). Moreover, the Government is not required to prove that Brian actually had the ability to carry out the alleged threat or that he ever had any intent to. As such, evidence that he did possess firearms, including an AR-15 style rifle, has no relevance to prove the elements of the crime charged. This evidence is thus irrelevant and thus inadmissible.

## II. Evidence of Brian's Ownership of Guns is Inadmissible to Prove his Specific Intent to Threaten.

### a. In the facts of this case, evidence of Brian's gun ownership is irrelevant to his specific intent.

Pursuant to Rule 404(b)(1) evidence of other crimes, wrongs, or other acts may not be admitted as propensity evidence. Fed. R. Evid. 404(b)(1)); *United States v. Moccia*, 681 F.2d 61, 63(1st Cir. 1982)("[R]ule [404(b)] codifies the common law doctrine forbidding the prosecution from asking the jury to infer from the fact that the defendant has committed a bad act in the past, that he has a bad character and therefore is more likely to have committed the bad act now charged. Although this 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged -- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment -- creates a prejudicial effect that outweighs ordinary relevance.") (cleaned up). However, this evidence may nonetheless be admitted for other purposes such as proving motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2).

As noted above, Brian intends to stipulate that he posted the Tweet. Thus, evidence he owned the firearms is not admissible to prove his identity. Evidence of Brian's ownership of the firearms is further inadmissible to show that he had a specific intent to threaten.

In its Motion in Limine filed in advance of Brian's first trial, the Government cited to a non-binding case from the Ninth Circuit, *United States v. Sutcliffe*, to argue evidence of Brian's

gun ownership is admissible to show his specific intent to threaten. (ECF No. 86) at 10 citing 505 F.3d 944, 958–59 (9th Cir. 2007). In *Sutcliffe*, Defendant was accused of posting threats to his former employer and a service processor who had served him with a temporary restraining order on a website he created. F.3d at 951–52. This included one communication posted to his website directed towards the then-chairman of his former employer which stated, "Keep your dogs @ bay…I'm now armed." *Id*. at 952. At trial, Defendant contended that by "now armed" he intended to convey he was "armed with information." *Id*. at 959. Thus, the Government sought to introduce evidence of his gun ownership to prove by "armed" the Defendant intended to refer to armed with weapons. *Id*. ("Thus, the government introduced evidence of Defendant's weapon possession to demonstrate that he actually intended to threaten violence and was not innocently talking about being armed with information or about stabbing and killing in some metaphorical sense."). In other words, the Government's citation to *Sutcliffe* glosses over a key nuance: evidence of the guns wasn't admitted to show his specific intent to threaten, but rather for the purpose of proving his specific intent behind the meaning of the word "armed."

In this case, Brian does not dispute any of the meaning of the words in the Tweet. Thus, evidence of his actual gun ownership is not relevant to show his intent behind the meaning of any of the words. As such it has no relevance to the elements of the charged crime. Instead, as discussed *infra*, the real purpose behind admission of the guns is to evoke an emotional response and instead convict Brian for an act for which is not currently charged.

### III.     Evidence of Brian's Gun Ownership is Inadmissible Under Rule 403

Even where evidence is determined to be relevant to the charged offense, it may nonetheless be subject to exclusion where its probative value is substantially outweighed by a

5

danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

> a. *Even if the Court finds that evidence of Brian's gun ownership is relevant to his specific intent, as the probative value of this evidence is far outweighed by its prejudicial effect, it remains inadmissible.*

The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) citing J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence P403[03] (1996) (discussing the meaning of "unfair prejudice" under Rule 403) and Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C. App., p. 860 ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Our State is still reeling from the tragic events that unfolded in Lewiston just three weeks ago. For Mainers across our state, including undersigned, the mass shooting shook our sense security and safety in our home and forced us to grasp a new reality: mass shootings can happen anywhere, including in Maine. Understandably, this unspeakable tragedy has rekindled and -in our community – created new urgency to existing debates about what to do with the tragically high rates of gun violence in America. *See* e.g., Richard McWilliams, *Maine Voices: Arguments Against Gun Control are Crafted to Mislead*, Portland Press Herald (Nov. 8, 2023) https://www.pressherald.com/2023/11/08/maine-voices-arguments-against-gun-control-are-crafted-to-mislead/; Jim Fossell, *Our Systems Failed Lewiston Victims*, Portland Press Herald (Nov. 5, 2023) https://www.pressherald.com/2023/11/05/jim-fossel-our-systems-failed-lewiston-victims/; Patty Wight, *Lewiston Shootings Shined Light on Maine's Yellow Flag Law. But Could Another Law Have Been Used?* MPBN (Nov. 8, 2023) https://www.mainepublic.org/courts-and-

crime/2023-11-08/lewiston-shootings-shined-light-on-maines-yellow-flag-law-but-could-another-law-have-been-used. In particular, much of this debate has centered around the shooter's access to an AR-15 style rifle. Emily Duggan & Andrew Rice, *Police Identify 2 AR-Style Rifles, Handgun as Weapons Linked to Lewiston Mass Shooting*, Portland Press Herald (Oct. 30, 2023) https://www.pressherald.com/2023/10/30/state-police-identify-1-of-3-guns-linked-to-lewiston-shootings/; Samantha Hogan, David Dahl & Rose Lundy, *Mass Shooting Turns Spotlight on Maine's Sparse Gun Laws*, Maine Monitor (Oct. 26, 2023) https://themainemonitor.org/maine-sparse-gun-laws/ (discussing Rep. Golden's reversal in his position regarding bans on assault rifles); Edward Helmore, *Maine is Hunting Country. Most Say Assault Rifles are Not Part of That*, The Guardian (Oct. 28, 2023) https://www.theguardian.com/us-news/2023/oct/28/maine-shootings-lewiston-hunting-assault-rifles-gun-ownership.

Given the temporal proximity of the tragic events in Lewiston and Mr. Dennison's trial, there is no question that evidence of guns – in particular the AR-15 style rifle – will evoke an emotional response from the jury. However, Mr. Dennison is not charged with planning, committing, or attempting to carry out a mass shooting. His ownership of an AR-15 rifle, while certain the subject of legitimate policy debate and disagreement, is not at issue in this trial.

Thus, in this time more than ever, admission of this evidence poses a substantial danger of unfair prejudice to Brian. As such, in order for Brian to have a fair trial it must be excluded.

    b. *Admission of the AR-15 would also waste the Court's time and resources and confuse the jury.*

As explained above, Brian voluntarily proffered the location of the AR-15 and pursuant to an agreement with the Government. While evidence recovered directly or indirectly from information obtained from the Proffer may still be admitted against the Defendant, in exchange for the information they are seeking, the Government agrees not to offer into evidence any of the

7

defendant's direct statements. In other words, in this case, while the Proffer does not prevent the Government from introducing the AR-15 rifle, it does still protect against introduction of Brian's statements which led to its discovery.

Moreover, to introduce the AR-15 rifle, the Government will still need to prove that it was Brian's gun. This will waste both Court time and resources and further detract from the jury's focus on the essential facts underlying the elements of the crime charged. It also risks misleading the jury into convicting Brian based on their fear that he may have been planning to carry out the alleged threat. This would then in turn force Brian to defend against an offense for which he is not charged.

## **CONCLUSION**

Ability or intent to carry out the threat is not an element of 18 U.S.C. § 875(c). There is no allegation here that Brian was intending or planning to kill anyone with his AR-15 rifle. The facts at issue in this case are whether his Tweet contained a true threat and whether he intended the Tweet to be a true threat. As evidence of his gun ownership will not aid the jury in resolving these issues and poses a substantial danger of prejudicing Brian, it should not be admitted at his trial.

WHEREFORE, for all the foregoing reasons, Defendant Brian Dennison respectfully requests this Honorable Court grant his Motion in Limine to prevent the Government from introducing any evidence of Brian's gun ownership.

Dated this 15th day of November 2023, at Portland, Maine.

Respectfully submitted,

*/s/ Tom Hallett*

_____

Thomas F. Hallett, Bar No. 3142
*Attorney for Defendant*
HALLETT WHIPPLE WEYRENS
6 City Center, Suite 208
P.O. Box 7508
Portland, Maine 04112-7508
Tel: 207-775-4255
thallett@hww.law


*/s/ Grainne Dunne*

_____

Grainne Dunne, Bar No. 6738
*Attorney for Defendant*
HALLETT WHIPPLE WEYRENS
6 City Center, Suite 208
P.O. Box 7508
Portland, Maine 04112-7508
PH: 207-775-4255
*gdunne@hww.law*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### CERTIFICATE OF SERVICE

I, **Grainne Dunne**, attorney for **Brian Dennison** hereby certify that I have served electronically, a copy of this motion upon **Assistant United States Attorney Craig Wolf, Esq.**, via the ECF system.

Dated: November 15, 2023                             /s/ *Grainne Dunne*

                                                     Counsel for the Defendant